

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-11-00216-CR
_____

JAY PAUL YZAGUIRRE, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court #1
Dallas County, Texas
Trial Court No. F10-63774-H

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

OPINION

In Dallas County, Texas, Jay Paul Yzaguirre was indicted on charges of aggravated robbery with the use and exhibition of a deadly weapon.[1] Yzaguirre was found guilty by a jury and was sentenced to thirty years' imprisonment.

On appeal, Yzaguirre argues that the trial court erred in refusing to instruct the jury on what he claims was the lesser-included offense of robbery.

We reverse the trial court's judgment and remand the case for a new trial because there was some evidence that if Yzaguirre was guilty, he may have been guilty of only robbery and not aggravated robbery.

**Factual Background**

On December 14, 2010, at about 10:00 a.m., Yzaguirre, Tony Manjares, and Edgar Aguilar drove to the home of Salvadores Sanchez in Dallas, Texas, because Manjares had heard it was a drug house and that there was a stash of drug money and gold in the home. At the time, Sanchez was at work in Las Colinas, and only his wife, Maria Reyes, and her daughter, Anayeli Sanchez,[2] were at home.

Manjares rang the doorbell and knocked on the front door while Yzaguirre and Aguilar went to the kitchen door. Reyes testified that when she did not open the door, Manjares said he was there to see a car that he had heard that Sanchez was selling and that he had been referred to

---

[1]Originally appealed to the Fifth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005). We are unaware of any conflict between precedent of the Fifth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[2]We will refer to Anayeli Sanchez as Anayeli in this opinion to avoid confusion of names.

2

them by a friend of Sanchez. Upon hearing this, Reyes opened the door because they did have a car for sale, but the "for sale" sign was not on it at the time. When Reyes was unable to answer Manjares' questions about the car, Reyes called her husband on the telephone and let Manjares speak with him. During the telephone conversation, Sanchez revealed to Manjares that he would not be able to leave work until about 5:00 that evening.

When the telephone call ended, Manjares put a gun to Reyes' head and forced his way into the home while Yzaguirre and Aguilar entered through the kitchen door. Manjares demanded money and gold from Reyes, and the three men rummaged through the home, looking for it. During their search, Reyes called Sanchez once again, and Sanchez was able to overhear Reyes being threatened and someone demanding money. Sanchez called 9-1-1, and then also called his next-door neighbor, Juan Carlos Hernandez, to check on his home.

The noise and commotion woke Reyes' daughter, Anayeli, who had been sleeping upstairs. Anayeli called the police on the telephone, but Yzaguirre and Aguilar soon discovered her and locked both her and Reyes in a closet. In response to Sanchez' telephone call, Hernandez came to the Sanchez home. He saw the robbery take place, but he was soon discovered. The three men forced Hernandez inside the house, took his money, and forced him to lie on the floor.

Two police officers, Terance Thomas and Chris Thomas, arrived in response to the emergency calls, and they could see men pacing and talking to one another inside the home. Terance Thomas went to the rear of the home as Chris Thomas knocked on the front door. Yzaguirre ran out of the back door (the kitchen door) and Terance Thomas grabbed him.

3

However, one of the other alleged robbers fled out the same door and ran into the officer, who was unable to detain both men. Terance Thomas testified that Yzaguirre extricated himself and ran, dropping a rifle in the process. Yzaguirre was eventually caught about a mile away from the home.

After his arrest and interrogation, Yzaguirre provided a written confession stating, "I did do it. I'm sorry I did it; I won't ever do it again."[3] At trial, Yzaguirre admitted to participating in the robbery, but denied having, exhibiting, or using a weapon. The jury found Yzaguirre guilty, and he was assessed a thirty-year sentence.

## Requested Instruction on Lesser-Included Offense

In his sole point of error, Yzaguirre argues that the trial court erred in refusing his requested inclusion of an instruction and charge to the jury regarding the lesser-included offense of robbery.

To determine if a defendant is entitled to a lesser-included offense instruction, a two-pronged test applies. *Hall v. State*, 158 S.W.3d 470, 473 (Tex. Crim. App. 2005). First, the lesser-included offense must be included within the proof necessary to establish the offense charged. *Id.*; *Hampton v. State*, 109 S.W.3d 437, 440 (Tex. Crim. App. 2003); *Lofton v. State*, 45 S.W.3d 649, 651 (Tex. Crim. App. 2001); *Bignall v. State*, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994).

In this case, robbery is necessarily a lesser-included offense of aggravated robbery, as the sole difference between the elements of the two offenses is the aggravating factor—the use or

---

[3]Over Yzaguirre's objection, the confession was held to be voluntary and admissible.

exhibition of a deadly weapon. *See also Little v. State*, 659 S.W.2d 425, 426 (Tex. Crim. App. 1983) (offense is lesser-included offense if it differs from offense in respect of degree of injury or mental state); *see also McKinney v. State*, 12 S.W.3d 580, 583 (Tex. App.—Texarkana 2000, pet. ref'd).

Second, there must be some evidence in the record that would permit a jury to rationally find that if the defendant is guilty, he is guilty only of the lesser-included offense. *Hall*, 158 S.W.3d at 473. A defendant can qualify for a lesser-included offense instruction if the record contains evidence that if believed by the jury, negates or refutes an element of the greater offense or is subject to different interpretations by the jury. *Saunders v. State*, 840 S.W.2d 390, 391–92 (Tex. Crim. App. 1992) (per curiam). In applying the second prong, the appellate court must examine the entire record instead of plucking certain evidence from the record and examining it in a vacuum. *Ramos v. State*, 865 S.W.2d 463, 465 (Tex. Crim. App. 1993). Anything more than a scintilla of evidence is sufficient to entitle a defendant to a lesser charge.[4] *Ferrel v. State*, 55 S.W.3d 586, 589 (Tex. Crim. App. 2001). In making this decision, courts do not consider whether the evidence is credible, controverted, or in conflict with other evidence. *Hall*, 158 S.W.3d at 473.

To determine whether the facts support an instruction as to a lesser-included offense, we must resolve the threshold issue of whether the charge allowed the jury to convict Yzaguirre under the law of parties. If the jury could convict Yzaguirre as a party, there are no facts which would allow the jury to find him guilty of only robbery because it is undisputed that a robbery

---

[4]A lesser-included offense instruction is not warranted by just disbelieving evidence proving an element of the greater offense. *Hampton*, 109 S.W.3d at 440–41.

5

had taken place, that Yzaguirre participated in the robbery, and that Yzaguirre was aware that Manjares was armed with a gun and had used or exhibited it during the robbery. *See* TEX. CODE CRIM. PROC. ANN. art 42.12, § 3g(a)(2) (West Supp. 2011) (jury can find deadly weapon if defendant was party to offense and knew deadly weapon would be used or exhibited); *see also Sarmiento v. State*, 93 S.W.3d 566, 569 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (evidence that defendant personally exhibited weapon not required when defendant is party to offense). Conversely, if the theory of party responsibility was not before the jury, they could rationally believe Yzaguirre's testimony (however weak or controverted it was) that he did not have or use a gun during the robbery and, consequently, find him guilty only of robbery while finding him not guilty of aggravated robbery.

In the abstract portion of the charge, the jury was instructed regarding the standard definitions of the law of parties. However, no such language is found in the application paragraph, which states,

> Now, considering all the law contained in the court's charge, if you find and believe from the evidence beyond a reasonable doubt that on or about December 14th, 2010, in Dallas County, Texas, the defendant, JAY PAUL YZAGUIRRE, unlawfully then and there while in the course of committing theft of property and with intent to obtain and maintain control of said property of MARIA REYES, hereinafter called complainant, did then and there intentionally or knowingly threaten an [sic] place the complainant in fear of imminent bodily injury and death, and the defendant did then and there use or exhibit a deadly weapon, to-wit: a firearm, you shall find the defendant guilty of aggravated robbery as charged in the indictment.

The application paragraph of a jury charge is that which authorizes conviction, and an abstract charge on a theory which is not applied to the facts is insufficient to bring that theory

6

before the jury. *Campbell v. State*, 910 S.W.2d 475, 477 (Tex. Crim. App. 1995); *see also Clark v. State*, 929 S.W.2d 5 (Tex. Crim. App. 1996) (theory of law must be applied to facts, even though it may be defined in abstract portion of charge). "[I]t is error for a trial judge to refer to the law of parties in the abstract portion of the jury charge and not to apply that law or to refer to that law in the application paragraph of the jury charge." *Campbell*, 910 S.W.2d at 477. Here, because the law of parties is not applied to the facts in the charge's application portion, the theory of party responsibility was not before the jury. Thus, as there is at least some evidence in the record that would permit a jury to rationally find Yzaguirre guilty only of the lesser-included offense of robbery, the trial court erred by refusing to instruct the jury as to the lesser-included offense. *See Hall*, 158 S.W.3d at 473.

Having found error in the trial court's jury charge, we evaluate the record to determine whether Yzaguirre was harmed. *Hamel v. State*, 916 S.W.2d 491, 494 (Tex. Crim. App. 1996). Because Yzaguirre objected to the error at trial, reversal is required if the error is "calculated to injure the rights of defendant," which is defined to mean that there is "some harm." *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g); *Aguilar v. State*, 914 S.W.2d 649, 651 (Tex. App.—Texarkana 1996, no pet.). In other words, a defendant must have suffered some actual, rather than theoretical, harm from the error. *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986). The presence of any harm, regardless of degree, is sufficient to require reversal. *Abdnor v. State*, 871 S.W.2d 726, 732 (Tex. Crim. App. 1994).

The record demonstrates some harm to Yzaguirre. Under the circumstances of this case, aggravated robbery requires proof the defendant committed robbery using or exhibiting a deadly

7

weapon. Tex. Penal Code Ann. § 29.03(a)(2) (West 2011). While there is testimony from Reyes and Terance Thomas that Yzaguirre had a gun at some point during the robbery, there is also testimony from Yzaguirre that he did not have or use a gun. If the jury had been given the alternative to convict Yzaguirre of robbery (i.e., to find that he participated in the robbery, but did so without using or exhibiting a deadly weapon), it is reasonably possible that that might have been the result. Thus, there was harm. Because Yzaguirre suffered some harm from the denial of a robbery charge, we reverse the trial court's conviction and remand the case for a new trial.

Bailey C. Moseley
Moseley

Date Submitted:     May 14, 2012
Date Decided:      May 23, 2012

Publish

8