

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-12-00076-CR
_____

GARY DONELL SANDERS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 4th Judicial District Court
Rusk County, Texas
Trial Court No. CR11-255

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

OPINION

Gary Donell Sanders did nothing to win Officer Shane Guthrie's friendship when he spat on the back of Guthrie's head as he sat in the back seat of Guthrie's patrol car. As a result of this conduct, Sanders was convicted by a jury for harassment of a public servant and was sentenced to seven years' imprisonment. Sanders appeals his conviction, arguing that the trial court erroneously: (1) denied a motion to suppress the evidence; (2) denied a motion for mistrial based on the use of illegally obtained evidence; (3) failed to instruct the jury on the use of illegally obtained evidence; (4) denied a motion for mistrial despite intentional destruction of the saliva; (5) failed to charge the jury on the lesser included offense of assault; and (6) failed to grant a mistrial "after it became apparent that the presiding juror for the punishment phase was different from the guilt/innocence phase."

We note that the second, third, and fourth points of error—i.e., the failure to grant a mistrial due to the alleged use of illegally obtained evidence, the failure to instruct the jury on the use of illegally obtained evidence, and the complaint regarding the refusal to grant a mistrial (as these issues were developed by Sanders' brief)—each hinge on the assumption that the failure to preserve the spittle somehow rendered evidence that Sanders spat on the officer tainted and inadmissable.

We affirm the judgment of the trial court because we find that Sanders failed to preserve error on the motion to suppress, the destruction of the spittle which had been spewed by Sanders did not render evidence of the act of spitting inadmissible, Sanders was not entitled to the lesser included offense instruction, and the change in presiding jurors was not harmful.

2

## I.    Factual Background

Guthrie was uniformed and on patrol when he observed Sanders "walking in . . . the eastbound travel lane of West Main" Street, "staggering down the roadway." A videotape recording of Sanders walking in the lane of traffic in an unbalanced fashion was played for the jury. Guthrie believed Sanders was "maybe . . . having a health issue or possibly intoxicated. Something was definitely wrong." Guthrie was concerned because "anybody coming down that hill [would] not see him and [could] run over him." The recording depicts Sanders almost staggering in front of the patrol unit's path.

Guthrie turned on his patrol unit lights, exited the vehicle, and initiated contact with Sanders.[1] Immediately, Guthrie noted that Sanders "had a very strong odor of an alcoholic beverage on or about his person" and that he had "slurred speech" and "red bloodshot eyes." Sanders reached in his pocket and gave Guthrie an unopened can of beer. Guthrie determined he was "clearly intoxicated and presented a danger to himself or others." He handcuffed Sanders. A "search incident to arrest" was completed, revealing another unopened can of beer and "a little metal pipe" used to "smoke crack cocaine or rock cocaine." Sanders was placed in the back of the patrol car due to his public intoxication and possession of drug paraphernalia.

---

[1]During cross-examination, Sanders' counsel attempted to suggest that Sanders might have been walking down a part of the road that was "designated for people who are walking or for riding a bicycle." However, Guthrie testified that he did not remember the road having a clearly-marked white lane designating a bicycle path. The recording played for the jury confirmed that there was no bicycle or walking lane on the road where Sanders was walking.

Guthrie described Sanders as "[v]ery belligerent . . . swearing a whole lot." The video recording of the arrest depicting Sanders' intoxicated and aggressive demeanor was played for the jury. During transport to the jail, Guthrie testified that the following occurred:

> [Sanders] actually leaned past, leaned sideways in the seat of the car, and he's actually got his mouth up close to the cage, the part of it where there's no glass partition. He's leaning out. Of course, he's just tirading, and I hear him clear his throat. And the next thing I hear, the sound, I know, is somebody spitting. I feel it hit me in the back of my head.

Guthrie "reached up to feel it" and realized that Sanders, the only person in the back seat of the patrol car, had projected "a good mouth spit" onto him. On the recording, Guthrie is heard instructing Sanders, "[D]on't be spitting on me again." He became concerned that Sanders could have a communicable disease and informed him that spitting could constitute harassment of a public servant. After Sanders was dropped "off in book-in," Guthrie washed the saliva from his head. He did not wait for the saliva to be collected because "[w]e knew exactly who it was that had . . . committed the offense." The jury did as well. They convicted Sanders for harassment of a public servant.

## II. Sanders' Motion to Suppress Was Not Preserved

In his first point of error, Sanders argues that the trial court erred in overruling his motion to suppress the evidence, which complained generally that the search and seizure was illegal. On the day of jury selection, a handwritten motion to suppress "any and all evidence in this case" was filed with the trial court. The court did not rule on the motion before trial, but decided to "carry it to trial." There was no hearing on the motion to suppress when trial began the

4

following day, and the court gave no further special instructions to Sanders' counsel regarding whether and/or when the motion would be ruled upon.

Guthrie testified to the discovery of the beer cans and crack pipe and told the jury that Sanders had spit on him, all without objection. Thereafter, three objections were lodged during the introduction of the videotape recording of the arrest, but none challenged the video on grounds that it was the result of an illegal seizure or search. After presentation of this evidence, Sanders' counsel asked the court to hear the motion to suppress and argued that Guthrie "had no reasonable suspicion or probable cause to arrest the defendant or to seize him and throw him over the police car and handcuff him and search him as he did." The trial court denied the motion.

A motion to suppress evidence is "nothing more than a specialized objection to the admissibility of that evidence." *Black v. State*, 362 S.W.3d 626, 633 (Tex. Crim. App. 2012) (citing *Galitz v. State*, 617 S.W.2d 949, 952 n.10 (Tex. Crim. App. 1981)). Filing a motion to suppress alone does not preserve any error in the admission of the evidence sought to be suppressed. *Coleman v. State*, 113 S.W.3d 496, 499–500 (Tex. App.—Houston [1st Dist.] 2003), *aff'd on other grounds*, 145 S.W.3d 649 (Tex. Crim. App. 2004). If a motion to suppress has yet to be ruled on when the evidence is offered at trial, a defendant must object to the evidence at the time it is offered in order to preserve error. *Ross v. State*, 678 S.W.2d 491, 493 (Tex. Crim. App. 1984); *Ortiz v. State*, 930 S.W.2d 849, 855 (Tex. App.—Tyler 1996, no pet.).[2]

---

[2]Further, the arguments at a suppression hearing must comport with arguments on appeal. *See Rothstein v. State*, 267 S.W.3d 366, 373 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd); *see also Dunavin v. State*, 611 S.W.2d 91, 94–97 (Tex. Crim. App. [Panel Op.] 1981).

5

Noncompliance with this rule is excused when, and only when, the trial court makes specific pretrial comments that "essentially [direct the defendant] to wait until all the evidence [is] presented" before seeking a ruling from the court on the motion to suppress and has told the defendant that it would "make no ruling until all the testimony had been presented." *Garza v. State*, 126 S.W.3d 79, 84–85 (Tex. Crim. App. 2004). No such instruction was given to Sanders in this case. Thus, Sanders was required to object and assert grounds for suppressing the evidence.

Although he did so after the evidence was presented, objections to evidence must be timely. "To be timely, an objection must be raised at the earliest opportunity or as soon as the ground of objection becomes apparent." *Thomas v. State*, 884 S.W.2d 215, 216 (Tex. App.—El Paso 1994, pet. ref'd). A ruling made on a motion to suppress after an officer has testified about the facts sought to be suppressed in front of a jury does not preserve error since the ruling is untimely obtained. *Id.*; *Marini v. State*, 593 S.W.2d 709, 714 (Tex. Crim. App. [Panel Op.] 1980); *Ratliff v. State*, 320 S.W.3d 857, 861 (Tex. App.—Fort Worth 2010, pet. ref'd); *Stults v. State*, 23 S.W.3d 198, 205–06 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd); *Laurant v. State*, 926 S.W.2d 782, 783 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd); *see Nelson v. State*, 626 S.W.2d 535, 536 (Tex. Crim. App. [Panel Op.] 1981) (concluding defendant did not timely obtain ruling on motion to suppress until after evidence admitted and failed to preserve error for review). Because the trial court had not instructed Sanders that he could wait to object, or that it would hear the motion to suppress after admission of evidence, Sanders' arguments and

ruling on his motion to suppress were untimely. Accordingly, he did not preserve his first point of error for our review. It is overruled.

## III. Motion for Mistrial and Jury Instruction Based on Article 38.23 Were Properly Denied

After Guthrie had testified that he rid himself of the saliva because "it posed a potential risk to my personal safety," Sanders' counsel raised the following issue with the trial court:

> Your Honor, the witness has testified that he destroyed evidence in this case without any permission from a court or anyone with authority to tamper, alter or destroy evidence in a criminal proceeding. To that extent, Your Honor, the evidence has been destroyed, which is a third degree felony in and of itself. I would ask the Court order a mistrial.

Counsel pointed to Section 37.09 of the Texas Penal Code and argued that a violation of the Confrontation Clause had occurred. Later in the argument, counsel stated:

> We would also submit, Your Honor, that under 38.23 that this so-called evidence that no longer exists anymore, since it was destroyed illegally, it can't be used. So we're saying that since it's not even physically in existence anymore that it doesn't exist anymore and can't be used against our client under 38.23.

The trial court denied the motion for mistrial.

A trial court's ruling denying a motion for mistrial is reviewed for an abuse of discretion. *Duke v. State*, 365 S.W.3d 722, 727 n.9 (Tex. App.—Texarkana 2012, pet. ref'd) (citing *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009)). "The ruling must be upheld if it was within the zone of reasonable disagreement." *Id.* (quoting *Ocon*, 284 S.W.3d at 884).

On appeal, Sanders complains that the trial court erred when it denied a motion for mistrial under Article 38.23 of the Texas Code of Criminal Procedure. This Article prevents the introduction of evidence obtained by an officer or other person in violation of the law. TEX.

7

CODE CRIM. PROC. ANN. art. 38.23 (West 2005). As explained above, Sanders' arrest and evidence obtained thereafter was lawfully obtained. Therefore, no evidence which was illegally obtained was introduced at trial. Simply put, Article 38.23 does not apply to this case. Thus, the trial court did not abuse its discretion in denying the motion for mistrial based on Article 38.23.

Also, Sanders complained that he was entitled to an Article 38.23 instruction. An Article 38.23 jury instruction is mandatory only when there is a factual dispute regarding the legality of the search. *Pickens v. State*, 165 S.W.3d 675, 680 (Tex. Crim. App. 2005); *Brooks v. State*, 642 S.W.2d 791, 799 (Tex. Crim. App. [Panel Op.] 1982); *Malone v. State*, 163 S.W.3d 785, 802 (Tex. App.—Texarkana 2005, pet. ref'd). In order to be entitled to such an instruction, the defendant must show "(1) an issue of historical fact was raised in front of the jury; (2) the fact was contested by affirmative evidence at trial; and (3) the fact is material to the constitutional or statutory violation that the defendant has identified as rendering the particular evidence inadmissible." *Robinson v. State*, 377 S.W.3d 712, 719 (Tex. Crim. App. 2012) (citing *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007)). "Where the issue raised by the evidence at trial does *not* involve contoverted historical facts, but only the proper application of the law to undisputed facts, that issue is properly left to the determination of the trial court." *Id.*

Both in the brief and at trial, Sanders failed to demonstrate what factual dispute necessitated the Article 38.23 charge. Because the only issue raised was the proper application of the law to the undisputed facts and circumstances surrounding the arrest and gathering of the evidence, and we have determined that evidence was legally obtained, we conclude that Sanders was not entitled to the Article 38.23 charge.

8

We overrule Sanders' points of error relating to Article 38.23 suggesting that the trial court erred in overruling his motion for mistrial and in failing to give the Article 38.23 charge.

## IV.    Motion for Mistrial Based on Destruction of Saliva Was Properly Denied

Sanders' true complaint centers on the intentional destruction of the saliva. A mistrial is a device used to halt trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). A trial court's ruling denying a motion for mistrial is reviewed for an abuse of discretion. *Duke*, 365 S.W.3d at 727 n.9. Sanders' briefing fails to set forth the appropriate standard of care regarding destruction of evidence and relies on cases addressing violations of Section 37.09 of the Texas Penal Code. Nevertheless, we interpret Sanders' brief to raise a due process issue with respect to destruction of evidence.

"The State's duty to preserve evidence is limited to evidence that possesses an exculpatory value that was apparent before the evidence was destroyed." *Chandler v. State*, 278 S.W.3d 70, 75 (Tex. App.—Texarkana 2009, no pet.). Three factors are deemed relevant in determining whether the loss of evidence violates a defendant's due process rights. *Id.* These include "the level of governmental culpability," "the likelihood that the lost evidence was exculpatory," and "the likelihood that the defendant was significantly prejudiced at trial by the absence of the evidence." *Id.*

In addressing whether the pretrial destruction of evidence constitutes a denial of due process of law, there is a distinction between "material exculpatory evidence" and "potentially useful evidence." *Arizona v. Youngblood*, 488 U.S. 51, 57–58 (1988). A due process violation

9

occurs when the State suppresses or fails to disclose material, exculpatory evidence, regardless of whether the State acted in bad faith. *Id*. However, when the State has destroyed potentially useful evidence, as opposed to material exculpatory evidence, the defendant must show that the State acted in bad faith in destroying the evidence. *Id*.; *Ex parte Napper*, 322 S.W.3d 202, 229 (Tex. Crim. App. 2010); *Chandler*, 278 S.W.3d at 75; *McGee v. State*, 210 S.W.3d 702, 704 (Tex. App.—Eastland 2006, no pet.).

"[E]videntiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant" is potentially useful evidence. *Youngblood*, 488 U.S. at 58. In this case, Sanders' saliva falls within that category. Thus, it was Sanders' burden to show that the State acted in bad faith in failing to preserve the evidence. *Chandler*, 278 S.W.3d at 75 (citing *McGee*, 210 S.W.3d at 704).

Here, while Guthrie intentionally rid himself of Sanders' saliva, it was the result of a natural reaction due to concern of communicable disease. The likelihood that the saliva would have been exculpatory is minuscule, considering that Sanders was the only other person in the patrol unit besides Guthrie. Accordingly, Sanders did not show how he could have been significantly prejudiced at trial by the absence of the evidence. Finally, there is nothing in the record to show that Guthrie acted in bad faith. Based on these facts, we cannot find that the trial court abused its discretion in denying the motion for mistrial.

## V.      Sanders Was Not Entitled to the Lesser Included Offense of Assault

Sanders argues that the jury should have been charged with the lesser included offense of assault. The trial court's decision regarding a lesser included offense charge is reviewed under

an abuse of discretion standard. *Threadgill v. State*, 146 S.W.3d 654, 666 (Tex. Crim. App. 2004); *Dobbins v. State*, 228 S.W.3d 761, 768 (Tex. App.—Houston [14th Dist.] 2007, pet. dism'd, untimely filed). An abuse of discretion occurs when a trial court acts arbitrarily, unreasonably, or without reference to any guiding rules and principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990).[3]

We employ a two-pronged test to determine if a defendant is entitled to a lesser included offense instruction. *Sweed v. State*, 351 S.W.3d 63, 67 (Tex. Crim. App. 2011); *Yzaguirre v. State*, 367 S.W.3d 927, 929 (Tex. App.—Texarkana 2012, pet. granted) (citing *Hall v. State*, 158 S.W.3d 470, 473 (Tex. Crim. App. 2005)). First, the lesser included offense must be included within the proof necessary to establish the offense charged. *Yzaguirre*, 367 S.W.3d 927 (citing *Hall*, 158 S.W.3d at 473; *Hampton v. State*, 109 S.W.3d 437, 440 (Tex. Crim. App. 2003), *abrogated on other grounds by Grey v. State*, 298 S.W.3d 644 (Tex. Crim. App. 2009); *Lofton v. State*, 45 S.W.3d 649, 651 (Tex. Crim. App. 2001); *Bignall v. State*, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994)). "We must compare the statutory elements and any descriptive averments in the indictment for the greater offense with the statutory elements of the lesser offense." *Sweed*, 351 S.W.3d at 68 (citing *Ex parte Amador*, 326 S.W.3d 202, 206 n.5 (Tex. Crim. App. 2010); *Ex parte Watson*, 306 S.W.3d 259, 263 (Tex. Crim. App. 2009)).

---

[3]Our review of alleged jury charge error involves a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994); *see Sakil v. State*, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009); *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). First, we determine whether an error occurred. *Abdnor*, 871 S.W.2d at 731–32; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g), *reaffirmed by Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003).

Harassment of a public servant is included in the assaultive offenses chapter of the Texas Penal Code. A person commits this offense if, with the intent to assault, he "causes another person the actor knows to be a public servant to contact the . . . saliva . . . of the actor . . . while the public servant is lawfully discharging an official duty or in retaliation or on account of an exercise of the public servant's official power or performance of an official duty." TEX. PENAL CODE ANN. § 22.11(a)(2) (West 2011). Under Section 22.01(a)(3), a person commits assault if he "intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative." TEX. PENAL CODE ANN. § 22.01(a)(3) (West 2011). In this case, the elements of assault were required to prove harassment of a public servant. *Hall*, 158 S.W.3d at 473; *Brock v. State*, 295 S.W.3d 45, 51 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd).

However, the second part of the test requires some evidence in the record that would permit a jury to rationally find that if the defendant is guilty, he is guilty only of the lesser included offense. *Sweed*, 351 S.W.3d at 68; *Yzaguirre*, 367 S.W.3d at 930 (citing *Hall*, 158 S.W.3d at 473). A defendant can qualify for a lesser included offense instruction if the record contains evidence that if believed by the jury, negates or refutes an element of the greater offense or is subject to different interpretations by the jury. *Yzaguirre*, 367 S.W.3d at 930 (citing *Saunders v. State*, 840 S.W.2d 390, 391–92 (Tex. Crim. App. 1992) (per curiam)). In applying the second prong, we must "examine the entire record instead of plucking certain evidence from the record and examining it in a vacuum." *Id.* (citing *Ramos v. State*, 865 S.W.2d 463, 465 (Tex. Crim. App. 1993)). Anything more than a scintilla of evidence is sufficient to entitle a defendant

12

to a lesser charge. *Id.* (citing *Ferrel v. State*, 55 S.W.3d 586, 589 (Tex. Crim. App. 2001)). In making this decision, courts do not consider whether the evidence is credible, controverted, or in conflict with other evidence. *Id.* (citing *Hall*, 158 S.W.3d at 473).

Here, the additional elements required to prove the greater offense included whether Guthrie was a public servant, whether Sanders knew Guthrie was a public servant, whether Guthrie was discharging an official duty at the time of the assault, and whether Guthrie's discharge of official duties was lawful. *Hall*, 158 S.W.3d at 473.[4] It was undisputed that Guthrie was a public servant and that Sanders knew Guthrie was a police officer discharging his official police duty at the time of the assault. Further, the discharge of Guthrie's duties at the time of the assault—transporting Sanders to jail for public intoxication and possession of drug paraphernalia—was lawful. We conclude that there was no evidence in the record which, if believed, would negate or refute the four additional elements required to prove the greater offense. Therefore, there was no evidence which would permit a jury to rationally find that if Sanders was guilty, he was guilty only of assault and not harassment of a public servant. Accordingly, the trial court did not abuse its discretion in denying the lesser included offense charge.

This point of error is overruled.

---

[4]Here, the State's indictment alleged that Sanders "with intent to assault . . . cause[d] Shane Guthrie, a person the defendant knew to be a public servant . . . to contact the saliva of Gary Donell Sanders and the said Shane Guthrie was then and there lawfully discharging an official duty to-wit: booking Gary Donell Sanders into jail on another charge."

**VI.     Fact of Different Foremen in Different Phases of Trial Did Not Require a Mistrial**

Ramell Searcy was elected as the presiding juror during the guilt/innocence phase of the trial. Joffrey L. Plopper was the presiding juror during punishment. Sander's counsel "object[ed] to the fact that we have a new foreman" after the punishment verdict was returned and moved for a mistrial due to jury misconduct. We consider whether the denial of the mistrial was within the zone of reasonable disagreement. *Duke*, 365 S.W.3d 727 n.9.

Very few cases address this issue involving a different presiding juror chosen during the two phases of trial.[5] Where the matter is brought to the court's attention, it appears that the trial court should have the original foreman sign the punishment verdict. *Shelton v. State*, 441 S.W.2d 536, 538 (Tex. Crim. App. 1969). Sanders fails to cite caselaw requiring mistrial in such a case, but claims that the denial of the mistrial operated as a denial of due process of law.

"A mistrial halts trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile." *Ocon*, 284 S.W.3d at 884. Thus, a mistrial is an appropriate remedy only in "'extreme circumstances' for a narrow class of highly prejudicial and incurable errors." *Id*. (quoting *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004)) (citing *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000)). It should be granted "only when residual prejudice remains after less drastic alternatives are explored." *Id*. at 884–85.

---

[5]Sanders cites to Article 36.26 of the Texas Code of Criminal Procedure, which reads, "Each jury shall appoint one of its members foreman" to suggest jury misconduct. He references one case which found that the trial court properly responded to the jury's note asking whether it could change the presiding juror. *Elizaldi v. State*, 519 S.W.2d 881, 883 (Tex. Crim. App. 1975). The court's response was that the foreman they had elected would continue to serve unless he resigned or refused to serve. We are not presented with that situation in this case, as the trial judge here was unaware that the jury had decided to elect another foreman during the punishment phase. Accordingly, *Elizaldi* does not apply.

In this case, the trial judge asked the panel whether the change in presiding juror had any influence on the outcome of the verdict, and, as a whole, the jury shook their heads in response indicating a negative response. The jury members were individually polled on the record, and each member swore that they were in agreement with the verdict as it had been read in open court. Then, to be safe, the court individually polled each member of the jury asking whether "the fact that a different foreman was used in the punishment phase from the guilt/innocence phase . . . ha[d] any effect on [their] verdict?" Each member of the jury responded negatively. The trial court overruled the motion for mistrial.

Given the less drastic procedural alternative employed by the court in ensuring that the jury was not influenced by the change in the presiding jurors, we do not find that the trial court erred in overruling the motion for mistrial. This was not such an extreme circumstance that it fit within the narrow class of highly prejudicial and incurable errors that would require a mistrial. *See Shelton*, 441 S.W.2d at 538 ("The selection of another foreman by the jury of the penalty part of the trial does not show harm.") (quoting *Bryan v. State*, 260 S.W. 846 (Tex. Crim. App. 1924)); *see also Parish v. State*, 523 S.W.2d 665, 666 (Tex. Crim. App. 1975).

We overrule Sanders' last point of error.

15

## VII. Conclusion

We affirm the trial court's judgment.

Bailey C. Moseley
Justice

Date Submitted:     November 26, 2012
Date Decided:       December 6, 2012

Publish