

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-17-00162-CR

_____

JESSIE DEE SPENCE, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 5th District Court
Cass County, Texas
Trial Court No. 2017F00103

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

## MEMORANDUM OPINION

During a traffic stop in late 2016, Jesse Dee Spence had admitted ownership of the small quantity of methamphetamine that was found on his person by Hughes Springs Police Officer James Wayne Simpler. Subsequently, a Cass County jury found him guilty of possessing such controlled substance and assessed Spence six years' confinement. On appeal, Spence contends simply that the trial court erred by not granting him a mistrial when the State violated an order in limine by airing information on other bad acts without first getting specific approval from the bench. Because denying Spence a mistrial was within the trial court's discretion, we affirm the judgment.

Simpler had stopped Spence after noticing that the vehicle Spence was driving had an expired registration. When he approached the vehicle, Simpler recognized Spence. He also recognized Spence's passenger, Jerry Richardson. Because, in this relatively small community, Simpler was acquainted with Spence, he was aware that his driver's license had been suspended. Simpler asked Spence to exit the vehicle, at which point Spence informed Simpler that his driver's license was, in fact, suspended and that he was also driving without insurance. After contacting dispatch, Simpler learned that there was an outstanding warrant for Spence's arrest. Simpler then asked Spence if he had "anything illegal," and Spence responded that he had a "homemade Bowie knife" in the belt loop of his pants and a small bag of marihuana in his left pocket. Spence then began a search of the vehicle, finding a bag of methamphetamine and a hypodermic needle.[1]

---

[1]At trial, Spence stipulated to the legality of the search of the vehicle, conceding that he had given Simpler consent.

Simpler asked Spence's passenger, Richardson, if the drugs belonged to him. Richardson denied ownership. When Simpler asked Spence if the drugs were his, Spence admitted owning them.[2]

Before trial, Spence filed two motions in limine, asking the trial court to prohibit, among other things, any reference to Spence's outstanding warrant or to the marihuana that had been found on his person the night of the arrest. Following a brief hearing, the trial court stated, "[M]y ruling on extraneous offenses and prior wrongs or acts is simply that counsel for the State be required to approach the bench outside the presence and hearing of the jury. . . ." "Insofar as to that extent, the motion is granted. But only to the extent that the State has to approach and obtain a ruling before introducing it before the jury."

At trial, the following relevant exchange took place between the State and Simpler:

Q. And you asked him if he had anything illegal. And did he say that he did have anything illegal or show you anything illegal that he had?

A. Yes, sir.

Q. And what was it that he showed?

A. He had a homemade Bowie knife. It was in his belt loop. And then he had a small bag of marijuana in his left pocket.

Q. Okay. Now were you -- with the marijuana that could have been an arrestable offense. Were you going to arrest him for that or were you going to write him a ticket?

A. I was going to write him a ticket?

Q. And what -- what ticket would that have been?

---

[2]Spence also made a written statement, which was admitted at trial. In it, Spence stated that he "drove to Hughes Springs in a car[,] got stopped and the officer found meth in a bag and it was mine because it didn't belong to Jerry Richardson, because I had borrowed the car[.] He was just a passenger."

A. I would have just wrote him a ticket for drug paraphernalia.

Q. Okay. So sometimes that's up to officer's discretion, you can just write them a ticket --

A. Yes, sir.

Q. -- for a small amount?

A. Yes. Sir.

Q. Okay. And then did dispatch come back with any information about any outstanding warrants?

A. Yes, it came back --

At this juncture, Spence objected, and the trial court sustained his objection. After reminding the State that it was required to approach the bench before pursuing that line of questioning, the trial court dismissed the jury and proceeded to hear arguments on the admissibility of the proffered evidence. On conclusion of the parties' arguments, the trial court stated that it would instruct the jury to disregard the testimony at issue.[3] Spence then asked for, but was denied, a mistrial.

On appeal, Spence maintains that the trial court erred by denying his motion for mistrial. "A mistrial is an appropriate remedy in 'extreme circumstances' for a narrow class of highly prejudicial and incurable errors." *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009) (quoting *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004)). "A mistrial halts trial

---

[3]The trial court's instruction was as follows:

Ladies and gentleman of the jury, I have a specific instruction to give you at this time. You have heard -- first of all you've heard testimony that the defendant had a small bag of marijuana in his pocket. You are instructed to disregard that testimony for any and all purposes. Also you've heard testimony that the defendant had a warrant out for his arrest. You are instructed to disregard that testimony as well for any and all purposes.

4

proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile." *Id*. (citing *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)). Whether an error necessitates a mistrial must be determined by the particular facts of the case. *Id.*

We review a trial court's denial of a mistrial under an abuse-of-discretion standard. *Sanders v. State*, 387 S.W.3d 680, 687 (Tex. App.—Texarkana 2012, pet. ref'd). We consider "the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of the ruling." *Ocon*, 284 S.W.3d at 884 (citing *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004)).

Spence complains specifically of the questioning and testimony relating to the marihuana found on his person and the outstanding arrest warrant. Testimony referring to or implying an extraneous offense or bad act may be rendered harmless by an instruction to disregard it, unless it was clearly calculated to inflame the minds of the jurors or was "of such damning character as to suggest it would be impossible to remove the harmful impression from the jury's mind." *Kemp v. State*, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992). "The asking of an improper question will seldom call for a mistrial, because, in most cases, any harm can be cured by an instruction to disregard." *Ladd*, 3 S.W.3d at 567.

Spence contends that the trial court's instruction to disregard did not cure the admission of Simpler's testimony because it affected his own witness' credibility. Specifically, Spence points to the testimony of his girlfriend, Amanda Forshee,[4] wherein she asserted that Spence did not use

---

[4]Forshee is also Richardson's sister.

illegal drugs and that the automobile Spence was driving that evening did not belong to him. Instead, the vehicle had belonged to Forshee's father-in-law, and he had given it to her for her use. Forshee stated that the drugs inside the automobile could have belonged to her estranged husband, but that they were not Spence's "[b]ecause he doesn't do that type of stuff." Forshee testified that her estranged husband drove the car before "he ran off" to Arkansas approximately eight years earlier.[5] In sum, Spence contends that, because Simpler's testimony that Spence was found with marihuana on his person contradicted Forshee's testimony that Spence did not use drugs, the trial court's instruction to disregard was essentially ineffective. We disagree.

In reviewing the efficacy of the trial court's curing instruction, we may look at, among other things, the nature of the error, the persistence of the prosecution in committing the error, the flagrancy of the violation, the particular instruction given by the trial court, and the weight of the incriminating evidence. *Waldo v. State*, 746 S.W.2d 750, 754 (Tex. Crim. App. 1988). In this case, the complained-of evidence had little, if any, material relevance to the charged offense. To the extent it may have, the trial court instructed the jury that it was to disregard the evidence "for any and all purposes." We presume the jury followed the trial court's admonition to disregard the improper evidence. *Hinojosa v. State*, 4 S.W.3d 240, 253 (Tex. Crim. App. 1999). In addition, after the trial court's admonishment, the State did not refer to the evidence any further, nor did it allude to it in any manner during its closing argument. Moreover, the State presented overwhelming evidence of Spence's guilt; that is, Spence's own oral and written statements that

_____

[5]Richardson testified that Forshee's husband had been out of state for approximately ten years.

6

the drugs found in the car belonged to him. Taking into consideration the totality of the circumstances, the trial court could have reasonably concluded that the complained-of testimony was not so inflammatory as to be incurable by an instruction to disregard. We discern no abuse of discretion in the trial court's denial of Spence's motion for mistrial.

We overrule Spence's single point of error and affirm the trial court's judgment.


Josh R. Morriss, III
Chief Justice


Date Submitted:     January 31, 2018
Date Decided:       February 7, 2018

Do Not Publish

7