

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-22-00091-CR
_____

JOSE LUIS CALDERON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 54th District Court
McLennan County, Texas
Trial Court No. 2020-112-C2

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

MEMORANDUM OPINION

After a jury found Jose Luis Calderon guilty of continuous sexual abuse of a child, he was sentenced to life in prison. In his sole issue on appeal, Calderon maintains that the trial court erred when it denied his motion for a mistrial. For the reasons below, we affirm the trial court's judgment.[1]

## I.      Background

On the second day of the guilt/innocence phase of trial, Kenneth Zahirniak, the court bailiff, informed the trial court that a juror "had made a comment to him." In the presence of both parties, and after being sworn-in, Zahirniak stated,

> Around 9:00, 9:10, the jurors requested to go to the bathroom. So I let them go to the bathroom. As they were going to the bathroom, I noticed [Jane Doe[2]] and her family were on the bench. And so I let the jurors -- the jurors were already walking by when I noticed it, so when [we] passed, I had the [Jane Doe] move -- her and her family move to the 414th jury room.
>
> And about 9:22, Juror [R.L.] came to me and asked if he could give a gift to [Jane Doe] . . . . And I said, You can't. No contact with her. You know, after the trial, but right now you can't talk to her. You know, it's off limits. He said, Well, I have a website that I want to put her in touch with, and I have a $100 I want to give her. And then I came and notified the Judge. And I escorted him back to the jury room first.

The trial court inquired as to whether the other jurors had passed by Jane Doe and her family during the break, to which Zahirniak responded that they had. But Zahirniak also explained that

---

[1]Originally appealed to the Tenth Court of Appeals in Waco, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. We are unaware of any conflict between precedent of the Tenth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[2]We refer to the alleged victim by a pseudonym in order to protect her confidentiality. *See* TEX. R. APP. P. 9.10(a)(3).

2

none of the other jurors overheard his conversation with R.L. and that he did not believe that R.L. had shared their conversation with any of the other jurors.

The trial court also swore-in R.L., who stated that he was alone when he spoke to Zahirniak and that nobody was within hearing distance of them during their conversation. R.L. then explained, "So I have a friend. He owns a company called One Spark. He's been raped over two-hundred-and-something times. And so I wanted to give the [wrist]band to [Jane Doe] because she can go to that website and see that he helps tremendous amount of people." R.L. also informed the trial court that he had not had any contact with Jane Doe and that he "wouldn't do anything to jeopardize anything." In addition, R.L. said that he had not made up his mind about the disposition of the case, and he assured the court that he had no intentions of sharing the information with any of the other jurors.

After hearing the testimony, Calderon orally moved for a mistrial, arguing,

> I think that, first of all, the juror was not honest with us about his conduct. He did not state on the record when we questioned him that he offered a monetary donation. I think that is a clear indication that he has already decided what he wants to do in this case without even hearing the rest of the evidence.

> Neither side in this case at this point has rested or closed. There is absolutely no indication to the jury that they have heard everything they are going to hear in this case. And I think that he has already made up his mind. I feel like his -- his decision alone and his actions alone have tainted this process to the point that there's no way that Mr. Calderon can get a fair trial from this jury. And for that reason, I am going to ask for a mistrial.

Asking the trial court to deny Calderon's motion, the State argued, among other things, (1) that R.L. had not discussed the information with any of the other jurors, (2) that he did not intend to do so, and (2) that he had not yet made up his mind about Calderon's guilt or innocence.

3

Calderon replied, asserting that R.L. had been dishonest when he explained the circumstances to the court and that Calderon had "problems believing anything else that [R.L.] said after that." Calderon continued, "I cannot in good faith feel like he has not already made up his mind." After hearing both parties' arguments, the trial court denied Calderon's motion for a mistrial.

## II.    Discussion

### A.    A Portion of Calderon's Argument on Appeal Comports with His Objection at Trial

The State maintains that Calderon has waived his point of error because his objection at trial does not comport with his complaint on appeal. A "point of error on appeal must comport with the objection made at trial." *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). As stated in *Resendez v. State*, 306 S.W.3d 308 (Tex. Crim. App. 2009),

> Rule 33.1(a) of the Texas Rules of Appellate Procedure provides that a complaint is not preserved for appeal unless it was made to the trial court "by a timely request, objection or motion" that "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context."

*Id.* at 312 (quoting TEX. R. APP. P. 33.1(a)(1)(A)). "The purpose of requiring a specific objection in the trial court is twofold: (1) to inform the trial judge of the basis of the objection and give him the opportunity to rule on it; [and] (2) to give opposing counsel the opportunity to respond to the complaint." *Id.*

> Although there are no technical considerations or forms of words required to preserve an error for appeal, a party must be specific enough so as to "let the trial judge know what he wants, why he thinks himself entitled to it, and do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it."

4

*Id.* at 312–13 (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)).

The State points out correctly that, at trial, Calderon argued that a mistrial was appropriate because R.L. had already determined that Calderon was guilty prior to the close of evidence,[3] but on appeal, he argues that a mistrial should have been granted because R.L. failed to disclose relevant information during jury voir dire. We agree with the State that Calderon did not bring the latter portion of his argument to the trial court's attention, and therefore, we are unable to consider it on appeal. *See* TEX. R. APP. P. 33.1(a)(1)(A).[4]

At trial, Calderon argued that his motion for a mistrial should have been granted because R.L. attempted to give Jane Doe a monetary gift, which showed that he "ha[d] already made up his mind" that Calderon was guilty. On appeal, he makes a similar argument, maintaining that the trial court abused its discretion when it denied his motion for a mistrial because R.L. was "actually biased, demonstrated by [his] articulated desire to give the complainant monetary and sentimental gifts[,]" which deprived Calderon "of his constitutional right to an impartial jury." Accordingly, that portion of Calderon's point of error has been preserved for our review.

---

[3]Calderon maintains that, at the time of the complained-of event, the parties had not yet finished presenting their evidence. Calderon's assertion is technically correct. When Zahirniak and R.L. explained under oath what had occurred, neither party had rested. But the record shows that, immediately after the trial court heard from Zahirniak and R.L., the State and Calderon rested and began their closing arguments to the jury. In other words, the entire evidentiary presentation had been made and, notwithstanding closing arguments, it was time for the jurors to deliberate.

[4]However, since the credibility of R.L. is at issue in the preserved portion of the motion for a mistrial, we briefly address voir dire. Calderon accuses R.L. of withholding information about his friend. But the record on voir dire shows a series of panelists responding about their own experiences with sexual assault or those of family members. R.L. provided that information during voir dire. The trial court was in a position to see R.L. face to face at that time and during R.L.'s subsequent questioning when the mistrial motion was urged and considered.

**B.     Standard of Review**

"A mistrial is appropriate only when the record reveals highly prejudicial and incurable error." *McBurnett v. State*, 629 S.W.3d 660, 662 (Tex. App.—Fort Worth 2021, pet. ref'd) (quoting *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003)). "A mistrial halts trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile." *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009) (citing *Ladd v. State*, 3 S.W.2d 547, 567 (Tex. Crim. App. 1999)). "Whether an error requires a mistrial must be determined by the particular facts of the case." *Id.*

We review a trial court's denial of a mistrial under an abuse of discretion standard. *Id.*; *Sanders v. State*, 387 S.W.3d 680, 687 (Tex. App.—Texarkana 2012, pet. struck). We consider "the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of the ruling." *Ocon*, 284 S.W.3d at 884 (citing *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004)). If the ruling was within the zone of reasonable disagreement, it must be upheld. *Id.*; *Sanders*, 387 S.W.3d at 687.

**C.     Analysis**

"A juror must make decisions at the guilt and punishment phases using information obtained in the courtroom:  the law, the evidence, and the trial court's mandate." *Ocon*, 284 S.W.3d at 884 (citing *Granados v. State*, 85 S.W.3d 217, 235 (Tex. Crim. App. 2002)). A juror is required to keep an open mind as to a defendant's guilt until he has heard all of the evidence. *Quinn v. State*, 958 S.W.2d 395, 403 (Tex. Crim. App. 1997). If a juror makes "statements outside of deliberations that indicate bias or partiality, such bias can constitute jury misconduct

6

that prohibits the [defendant] from receiving a fair and impartial trial." *Granados v. State*, 85 S.W.3d 217, 235 (Tex. Crim. App. 2002) (citing *Quinn*, 958 S.W.2d at 402)).

A juror's disqualification based on bias is not usually appropriate unless the bias stems from an extrajudicial source. *Quinn*, 958 S.W.2d at 402. "[I]t defies common sense and human nature to require that a juror have no impressions or opinions until the judge sends the jury to deliberations. Jurors must necessarily engage in at least some assessment of credibility and evaluation of the evidence as the proceedings occur." *Id.* at 403. Consequently, we do not require a juror to remain completely void of an opinion relating to the defendant throughout the trial; instead, we require that he set aside that bias and remain fair and impartial as to the ultimate question, i.e., guilty or not guilty. *Id.* at 402.

When a juror conveys bias against the defendant, as R.L. has been accused of doing here, the trial court must determine whether the juror can set aside that bias and remain fair and impartial. *See Granados*, 85 S.W.3d at 235–36; *Quinn*, 958 S.W.2d at 403. An appellate court reviews a trial court's decision of whether to retain a juror who expresses bias for an abuse of discretion. *See Granados*, 85 S.W.3d at 235–36 (finding that, upon trial court's inquiry into alleged bias, "trial court retains discretion in determining whether a juror is biased"); *see also Fierro v. State*, 969 S.W.2d 51, 57 (Tex. App.—Austin 1998, no pet.) ("Because the trial court is in the best position to evaluate the demeanor of a . . . juror, we review a trial court's determination of a challenge for cause only for clear abuse of discretion.")).

In this case, R.L. had a very brief conversation with the trial court's bailiff about the possibility of giving Jane Doe a nominal gift in the form of a wristband and, according to

7

Calderon, a monetary gift of $100.00. Although R.L.'s actions were ill-conceived, Zahirniak did not relay R.L.'s intentions to Jane Doe, nor did he allow R.L. to give her a gift as he sought permission to do. Instead, Zahirniak correctly reminded R.L. that he was not allowed to have any contact with Jane Doe, and R.L. complied with Zahirniak's instructions. Further, the record shows that none of the other jurors overheard R.L. and Zahirniak having the complained-of conversation. Consequently, R.L.'s alleged bias was not communicated to any of the other jurors. Most importantly, however, the trial court heard from both parties to the conversation. R.L. explained to the court (1) that he had not had any contact with Jane Doe, (2) that he would not do anything to jeopardize the proceedings, (3) that he had no intentions of sharing his plans with the other jurors, and (4) that he had not yet made up his mind about the outcome of the case.

The standard of review is deferential to the trial court. *Colyer v. State*, 428 S.W.3d 117, 122 (Tex. Crim. App. 2014). "We view the evidence in the light most favorable to the trial judge's ruling and presume that all reasonable factual findings that could have been made against the losing party were made against that losing party." *Id.* (citing *Quinn*, 958 S.W.2d at 402). Based on R.L.'s assurances to the trial court that he was not biased toward the State, we cannot say that the record reveals a clear abuse of discretion in the trial court's retention of R.L. as a qualified juror. Accordingly, we overrule Calderon's sole point of error.

### III.    Conclusions

We affirm the judgment of the trial court.

Jeff Rambin
Justice

Date Submitted:    February 27, 2023
Date Decided:      March 28, 2023

Do Not Publish