

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-15-00232-CR

_____

BENNIE RAY GREEN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 188th District Court
Gregg County, Texas
Trial Court No. 44,842-A

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

On his way home from walking his dog at a public park near his Longview home, Brian Walker showed remarkable courage in an alley when facing the business end of a western-style revolver wielded by a man who demanded Walker's wallet. Walker refused the demand, ran home, and called 9-1-1 to report his encounter.[1] Approximately five minutes after the report, Longview police[2] arrived at the park and found Bennie Ray Green, a heavy-set, black man in possession of a black bag and a black do-rag, all consistent with the description of the man in the alley given by Walker. The bag contained a revolver, consistent with the described weapon wielded by the man

---

[1] In the alley, the man, who Walker had seen sitting on a park bench earlier, said, "Hold it, Old School." The man then pulled a firearm from a black bag, cocked the trigger, pointed the gun at Walker, and said, "I'm going to have to have that wallet, Old School." Walker responded, "You're just going to have to pop the cap." Walker then began backing away from the man, while holding his hands in the air. At that point, the man pointed the gun at Walker's dog, who was approximately twenty feet in front of Walker, and then he looked directly back at Walker. Walker responded to the man by gesturing toward him with an extended middle finger and continued backing away from him. When he was about ten feet away from the man, Walker began running with his dog toward his home. When he reached his home, Walker immediately contacted 9-1-1.

[2] Amy Works, an officer employed by the Longview Police Department (LPD), arrived at Walker's home shortly after he called 9-1-1. Walker proceeded to give Works a description of the perpetrator, explaining that he was carrying a black bag and wearing a "skull cap or some kind of do-rag, blue coveralls, and was heavyset." Walker described the gun as being a western-style revolver. Works relayed the information she received from Walker to Officers Charles Rockett and Kevin Nichols, also with the LPD.

Rockett and Nichols began a search of the area for a person matching Walker's description. The officers located a heavy-set, black man carrying a black bag, but he was not wearing coveralls or any type head cover. He was later identified as Green. Rockett asked Green about the contents of his black bag, to which Green denied ownership, as did the other two men standing on the bleachers with Green. Based on their answers, Rockett deemed the bag to be abandoned property, opened it, and located a gun. Because Green was the only heavy-set man in the group, Rockett detained him in the squad car.

The officers informed Works that a suspect had been detained in the park. Works then transported Walker to the park to give him the opportunity to identify the suspect. On the way to the park, Works informed Walker that the person who had been detained was not wearing blue coveralls, but that the officers had located some blue coveralls in the area. When they arrived, Walker remained in Work's patrol car and a handcuffed Green was taken out of another police vehicle. Green was not wearing the do-rag that Walker had seen him wearing earlier. Walker testified that he had no doubt that, when Green was taken out of the vehicle, he knew that he was the person who had robbed him. Walker also had no doubt that the man in the courtroom was the same man. He stated, "He's got -- he's got his hair cut from the way it was, you know, that day. He's tried to change it up some. But, yeah, that's him."

in the alley. Green was sweating profusely and seemed nervous to the officer. Though Green was not wearing blue coveralls or a black do-rag at the time, a black do-rag was found on his person and a subsequent search turned up blue coveralls stashed in some nearby playground equipment. When Walker was called to the park to see if Green was the man who accosted him in the alley, Walker looked at Green and stated, "There ain't no doubt that's him."

From resulting convictions and sentences for aggravated robbery and unlawful possession of a firearm by a felon,[3] Green appeals, challenging the trial court's failure to suppress the out-of-court identification by Walker, the failure to grant a mistrial, and the refusal to instruct the jury on a lesser-included offense of attempted aggravated robbery. We affirm the trial court's judgment, because (1) denying Green's motion to suppress was not error, (2) denying Green's motion for mistrial was not error, and (3) denying a jury instruction on a lesser-included offense of attempted aggravated robbery was not error.

*(1)* *Denying Green's Motion to Suppress Was Not Error*

Green contends the trial court erred when it denied his motion to suppress Walker's out-of-court identification of him on the basis that the procedure used for the identification violated his constitutional right to due process. Specifically, Green argues that the on-scene identification procedure in this case was so suggestive that it tainted Walker's ability to provide an accurate identification of the suspect at trial. Green also argues there was no emergency situation preventing the use of a more reliable method of identification.

---

[3]After the jury found Green guilty of both charges, the trial court sentenced him to thirty years' imprisonment on the charge of aggravated robbery and ten years' confinement on the charge of unlawful possession of a firearm by a felon. Before trial, Green filed a motion to suppress Walker's identification of him, arguing that it was impermissibly suggestive. The trial court denied the motion and proceeded to trial before a jury that same day.

A pretrial identification procedure may be so suggestive and conducive to mistaken identification that the later use of that identification at trial would deny the accused due process. *Barley v. State*, 906 S.W.2d 27, 32–33 (Tex. Crim. App. 1995). Because the issue of whether a pretrial identification procedure was impermissibly suggestive is a mixed question of law and fact, which does not turn on an evaluation of credibility or demeanor, we review the trial court's ruling de novo. *Gamboa v. State*, 296 S.W.3d 574, 581 (Tex. Crim. App. 2009). To determine the admissibility of both pretrial identification and a potentially tainted in-court identification, we consider the totality of the circumstances. *Barley*, 906 S.W.2d at 33. We must determine whether (1) the pretrial identification procedure was impermissibly suggestive and, if so, (2) whether the improperly suggestive procedure created a very substantial likelihood of irreparable misidentification. *Id*. The accused must prove both elements by clear and convincing evidence. *Id*. at 33–34.

Even if a suggestive pretrial procedure has been used, when the totality of the circumstances reveal no substantial likelihood of misidentification, the identification will be deemed reliable and, therefore, admissible.[4] *Webb v. State*, 760 S.W.2d 263, 269 (Tex. Crim. App.

---

[4]The Texas Court of Criminal Appeals has reasoned,

> While it must be conceded that an on-the-scene confrontation has some degree of suggestiveness, in many situations its use is necessary. First of all by viewing the alleged perpetrator of the offense immediately after the commission of the offense, the witness is allowed to test his recollection while his memory is still fresh and accurate. Additionally the quick confirmation or denial of identification expedites the release of innocent suspects. Thus, the innocent suspect need not be transported to jail and detained until a lineup can be constructed. Furthermore the police would be able to release the innocent suspect and continue their search for the criminal while he is still within the area and before the criminal can substantially alter his looks and dispose of evidence of the crime. Finally, any possible prejudice resulting from such a confrontation can be exposed by rigorous cross-examination of the witness.

4

1988).   Reliability is the cornerstone in determining the admissibility of the identification testimony.  *Manson v. Brathwaite*, 432 U.S. 98 (1977).  In determining reliability, we weigh the following nonexclusive factors:  (1) the opportunity of the witness to view the suspect at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the time between the crime and the confrontation.  *Ibarra v. State*, 11 S.W.3d 189, 195 (Tex. Crim. App. 1999).

Assuming, without finding, that the out-of-court identification procedure was impermissibly suggestive, we find that these facts do not give rise to a substantial likelihood of irreparable misidentification.  Before the incident, Walker had seen Green sitting on the park bleachers.  In addition, Walker had the opportunity to view Green from a very close distance during the face-to-face encounter, which took place on a bright, sunny day.  While it is not explicitly stated in the record how long Walker observed Green, we can infer that Walker had adequate time to assess Green's physical characteristics during the time Green spoke to Walker, pointed a gun at him, then pointed the gun at his dog.[5]  Further, Walker was likely to have been an attentive observer since he was a victim and not simply a casual observer.  A witness who is a victim, rather than a casual observer, is generally believed to have a greater degree of attention.  *See Brown v. State*, 64 S.W.3d 94, 101 (Tex. App.—Austin 2001, no pet.).

---

*Garza v. State*, 633 S.W.2d 508, 512 (Tex. Crim. App. 1981) (citations omitted).

[5]Green contends Walker was so focused on the weapon that he was unable to observe the person's physical characteristics.  We find no evidence to support Green's contention.

Further, Walker's description of Green was consistent in a number of details. He described him as a heavy-set, African-American male wearing blue coveralls, a do-rag, and carrying a black bag and a western-style gun. Following Walker's description, Rockett located a heavy-set, black male carrying a black bag. Shortly thereafter, the revolver was found in the bag and blue coveralls were located nearby in the park. When Walker was asked to identify Green, he was absolutely confident that Green had been the individual who had accosted him just minutes before. At trial, Walker not only identified Green, he explained, "He's got -- he's got his hair cut from the way it was, you know, that day. He's tried to change it up some. But, yeah, that's him."

We overrule this point of error.

*(2)      Denying Green's Motion for Mistrial Was Not Error*

Green also contends that, because the State engaged in improper argument, the trial court erred when it denied his motion for mistrial. Specifically, Green maintains that the State improperly argued, "[T]here's a point in that video where Hewitt[6] says, you know, he wants him to tell the truth. And really, under his breath, you can hardly hear it, but I have listened a couple of times, he says, 'I'm not ready.' I believe that's true. I believe he wasn't ready to be truthful with Defective [sic] Hewitt that day." Following the State's comment, Green objected, arguing that the comment assumed facts not in evidence.[7] The trial court responded, "Ladies and gentlemen, you've heard the evidence, and you'll be governed thereby."

---

[6]Hewitt was the detective who interviewed Green after he was transported to the LPD. The recording of the interview was published to the jury during the State's case-in-chief.

[7]Green maintains that he stated, "That ain't right, bro[,]" or "It ain't right, bro[,]" rather than "I'm not ready."

6

During deliberations, the trial court received a note from the jury foreman asking the trial court to allow the jurors to view the portion of the recorded interview that contained Green's comment. Before the jury entered the courtroom, the trial court and the parties listened to the portion of the interview at issue. Green renewed his objection and also moved for a mistrial. In the alternative, Green asked the trial court to instruct the jury to disregard the comment. The trial court denied Green's requests, finding that the appropriate remedy would be to allow the jurors to view that portion of the recorded interview for themselves.

Permissible jury argument falls into one of four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) an answer to the argument of opposing counsel; or (4) a plea for law enforcement. *Cannady v. State*, 11 S.W.3d 205, 213 (Tex. Crim. App. 2000). Even when an argument exceeds the permissible bounds of these approved areas, it will not be reversible unless the argument is extreme or manifestly improper, violates a mandatory statute, or injects into the trial new facts harmful to the accused.[8] *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000) (citing *Todd v. State*, 598 S.W.2d 286, 296–97 (Tex. Crim. App. 1980)). The prosecutor's remarks must have been a willful and calculated effort to deprive a defendant of a fair and impartial trial. *Id.* (citing *Cantu v. State*, 939 S.W.2d 627, 633 (Tex. Crim. App. 1997)). The State is "afforded wide latitude, in its jury argument as long as counsel's argument is supported

---

[8]In general, improper jury argument is considered to be a nonconstitutional error. *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998). Nonconstitutional error that does not affect the substantial rights of an accused must be disregarded. TEX. R. APP. P. 44.2(b). When determining whether improper jury argument affects an accused's substantial rights, courts examine the following three factors: (1) the severity of the conduct; (2) the measures taken to cure the misconduct; and (3) the certainty of the conviction absent the misconduct. *Id.* If the record as a whole reflects a fair assurance that the error did not influence the jury, or had but a slight effect, the conviction must not be reversed. TEX. R. APP. P. 44.2(b); *King v. State*, 953 S.W.2d 266 (Tex. Crim. App. 1997).

7

by the evidence and in good faith." *Stewart v. State*, 995 S.W.2d 187, 190 (Tex. App.—Fort Worth 1999, pet. ref'd). In most instances, the court's instruction to disregard the remarks will cure the error. *Wilkerson v. State*, 881 S.W.2d 321, 327 (Tex. Crim. App. 1994); *Cooks v. State*, 844 S.W.2d 697, 727 (Tex. Crim. App. 1992).

Although Green concedes that "the interjected fact in question was either only faintly audible or wholly inaudible," he contends the State's remark amounted to "severe misconduct that would generate great prejudicial effect." Green goes on to state, "The State's willful and calculated effort to implant that fact into the minds of some or all of the jurors is extreme, or manifestly improper, and a mistrial should have been granted when [Green] requested it."[9] We disagree.

In Green's recorded interview, the statement at issue was somewhat inaudible; presumably, that was the reason the jury asked to review that portion of the recording a second time. In addition, the State did not emphasize that segment of Green's interview and did not attempt to convince the jury that Green's words amounted to a confession. Further, the trial court instructed the jury that it must consider only the evidence and "that statements made by the lawyers are not evidence." In response to the differing interpretations as to what Green said, the trial court allowed the jury to review that part of the recording to determine what *it* believed Green said, thus, curing any error. If we disregard the State's comment, the remaining evidence was sufficient to support the jury's

---

[9]We review a trial court's denial of a mistrial under an abuse-of-discretion standard. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009); *Sanders v. State*, 387 S.W.3d 680, 687 (Tex. App.—Texarkana 2012, pet. struck). We consider "the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of the ruling." *Ocon*, 284 S.W.3d at 884 (citing *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004)). If the ruling was within the zone of reasonable disagreement, it must be upheld. *Id.*; *Sanders*, 387 S.W.3d at 687. Mistrial is only an appropriate remedy when the error is highly prejudicial and incurable. *Id.* (citing *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004)).

finding of guilt. Therefore, even if the State's comment was error, it was harmless and, thus, the trial court did not err when it denied Green's motion for mistrial.

We overrule this point of error.

*(3)    Denying a Jury Instruction on a Lesser-Included Offense of Attempted Aggravated Robbery Was Not Error*

Green contends the trial court erred when it refused to charge the jury on the lesser-included offense of attempted aggravated robbery. The State responds that Green did not preserve this issue for appellate review.

Outside the presence of the jury, Green requested the inclusion of an instruction on attempted aggravated robbery; however, he explained, the "big issue on [sic] the case, that I believe, is the identification of Mr. Green. I have a proposed instruction that I would submit to the Court regarding that issue that I have requested the inclusion." The trial court overruled Green's request as to the issue of identification, stating, "[T]hat will not be placed in the jury charge. But, you've got it properly on file and requested." The trial court proceeded, "[N]ow, as to the -- you didn't give me a copy of the attempt . . . ." Counsel responded, "I didn't have a copy of the attempt printed, Your Honor." With a brief explanation, the trial court overruled Green's request as to the inclusion of an instruction on attempted aggravated robbery.

Green argues that the State agreed with the inclusion of the requested instruction on attempted aggravated assault. The State denies such an agreement, and the record does not reveal such an agreement. Regardless, we find no error in the trial court's refusal to incorporate in its jury charge an instruction on attempted aggravated robbery.

9

The appropriate test to be applied in determining whether an accused is entitled to an instruction on a lesser-included offense is whether (1) the proof needed to establish the lesser-included offense is subsumed in the proof necessary to establish the offense charged and (2) some evidence exists that would allow a jury rationally to find that, if the accused is guilty, he is guilty only of the lesser offense. *Rousseau v. State*, 855 S.W.2d 666 (Tex. Crim. App. 1993). The evidence must be evaluated in the context of the entire record, and the reviewing court may not consider whether the evidence is credible, controverted, or in conflict with other evidence. *Moore v. State*, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998).

Section 29.02 of the Texas Penal Code defines robbery as follows:

(a)    A person commits an offense if, in the course of committing theft as defined in Chapter 31[10] and with intent to obtain or maintain control of the property, he:

(1)    intentionally, knowingly, or recklessly causes bodily injury to another; or

(2)    intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.

TEX. PENAL CODE ANN. § 29.02 (West 2011). Section 29.03 of the Texas Penal Code states that when a person commits the offense of robbery and he or she either causes serious bodily injury to another or uses or exhibits a deadly weapon, he or she has committed the offense of aggravated robbery. TEX. PENAL CODE ANN. § 29.03(a)(1), (2) (West 2011).

---

[10]Section 31.03 states, in part, "(a) A person commits [theft] if he unlawfully appropriates property with intent to deprive the owner of property. (b) Appropriation of property is unlawful if: (1) it is without the owner's effective consent . . . ." TEX. PENAL CODE ANN. § 31.03 (West Supp. 2016).

Because Walker testified that he was not placed in fear when Green brandished his weapon,[11] Green contends there is at least some evidence in the record that would permit a rational jury to find that, if Green is guilty of anything, he is guilty only of the lesser-included offense of attempted aggravated robbery.[12]  We disagree.

In this case, the State was required to show beyond a reasonable doubt that Green, while in the course of committing theft of property and with the intent to obtain or maintain control over the property, intentionally or knowingly threatened or placed Walker in fear of imminent bodily injury or death by exhibiting a deadly weapon.  Walker testified that Green cocked his weapon, pointed the gun at him, and demanded that Walker hand over his wallet.  Although Walker denied he was in fear when Green pointed the gun at him, he did testify that he felt threatened by Green's actions.  The statute requires only that Green threatened *or* placed Walker in fear of imminent bodily injury or death, not both.  There is no evidence that he failed to effect the commission of threatening Walker nor is there any evidence that Green failed to effect the commission of exhibiting a deadly weapon.

---

[11]Walker testified that he was not afraid of being injured by Green.  "I mean, the Bible says 'fear not' 85 times, so I'll go along with that.  I just ain't going to worry about nothing."  But when asked if he felt threatened by Green's action, Walker stated that he did.

[12]"Criminal attempt" is defined as follows:

> (a)      A person commits an offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended.

> (b)      If a person attempts an offense that may be aggravated, his conduct constitutes an attempt to commit the aggravated offense if an element that aggravates the offense accompanies the attempt.

TEX. PENAL CODE ANN.  § 15.01. (West 2011).

11

In other words, the evidence shows that Green successfully completed both of these requisite acts.[13]

Thus, the trial court was under no duty to include an instruction on the lesser-included offense of attempted aggravated robbery.

We overrule this point of error.

We affirm the trial court's judgment.


Josh R. Morriss, III
Chief Justice


Date Submitted:     October 13, 2016
Date Decided:       December 14, 2016

Do Not Publish

---

[13]Green's only failure was his inability to obtain Walker's wallet. Section 29.01(1) defines "in the course of committing theft" and the phrase "means conduct that occurs in an *attempt* to commit, during the commission, or in immediate flight after the attempt or commission of theft." TEX. PENAL CODE ANN. § 29.01(1) (West 2011). That Green was unsuccessful in his attempt to steal Walker's wallet has no effect on the propriety of the trial court's instructions to the jury.