

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-08-00062-CR

_____

STEVEN DUANE CHANDLER, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 294th Judicial District Court
Van Zandt County, Texas
Trial Court No. CR06-00225

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

OPINION

Steven Duane Chandler appeals his conviction for assault on a public servant.[1]  In two points

of error, Chandler claims:  1) the State failed to disclose or provide exculpatory evidence, thereby

violating the rule of *Brady v. Maryland*;[2] and 2) the prosecutor made a statement in closing argument

that was impermissible in that it was a comment on Chandler's failure to testify.  After reviewing the

trial record and applicable law, we overrule these points and affirm the trial court's judgment.

Chandler's first appellate point complains of the State's failure to preserve and disclose a

video recording of events in the Van Zandt County jail at the time of the assault for which Chandler

was convicted.  He alleges these actions are a violation of the Due Process Clause of the Fourteenth

Amendment.  *See* U.S. CONST. amend. XIV, § 1.  Because we find Chandler has failed to

demonstrate a due process violation, we overrule this point.

## I.  Background Facts

On April 12, 2006, Chandler was in the Van Zandt County jail.  He had just appeared before

a magistrate, who issued an emergency protective order against Chandler.  Witnesses inside the jail

testified Chandler was very angry about the issuance of the order and was loudly cursing.  When

Deputy Raymond Keener tried to put Chandler in a holding cell, Chandler stated he was not going

---

[1]This case was transferred to this Court from the Tyler Court of Appeals as part of the Texas Supreme Court's docket equalization program.  We are not aware of any conflict between the precedent of the Tyler Court and the precedent of this Court on any issue relevant in this appeal. *See* TEX. R. APP. P. 41.3.

[2]373 U.S. 83 (1963).

in that cell and demanded to be returned to a cell he had previously occupied. When Chandler would not comply with Keener's order to enter the cell, Keener sprayed Chandler's face with pepper spray. In response, Chandler became more angry and began to fight with deputies. A training session was being conducted in the booking area, with ten to thirty deputies and jail employees in that area. Keener put Chandler in the holding cell and attempted to rush out and then close the cell door, to lock Chandler in. But Chandler rushed out of the cell at Keener. By this time, Keener was being assisted by at least three other sheriff's office personnel. A fracas ensued wherein Chandler went to the ground, still angry and cursing. Keener testified Chandler kicked him in the testicles, causing Keener to turn "ghost white." He developed swelling in the groin area and was seen to be limping. Nicholas Haley and Sam Mayer, two other jail employees, saw Chandler kick Keener in the groin or midsection area.

The State's first witness at trial was Deputy Oliver Still of the Van Zandt County Sheriff's Office. Still was assigned to investigate the assault on and injury to Keener. In the course of his testimony, Still mentioned he had reviewed a video recording of the incident, captured on the jail's security camera system. However, that video had not been preserved and thus never provided to the defense. Still said that the jail had a camera system which did not allow for video to be copied, preserved, or transferred to disk, because the proper components had not been purchased. Still said the video could be reviewed for up to sixty days, when it was automatically deleted. However, four months elapsed between the altercation and the case being presented to the district attorney's office.

3

Based on statements made by the prosecutor, it is evident the State's attorney was never able to view the video. Still said he watched the video twice the day of the fight. Because there were a large number of people in the area, owing to a training session at the time,[3] he could not clearly see what happened. Still said the video did not give conclusive evidence that Chandler knowingly, intentionally, or recklessly struck Keener. Rather, Still said he developed probable cause to file a charge against Chandler based on his interviews of witnesses.

Through cross-examination of the State's witnesses, Chandler tried to assert self-defense. He called two witnesses, the first of which was a jail nurse present on the date of the altercation, who testified that, shortly after he had been kicked in the testicles, Keener told her he had recently been diagnosed with kidney stones. Chandler then called another jailer, Jack Bickle, who testified he was in the book-in area attending the training session on the day of the fight. He heard Chandler being "verbally abusive" to Keener and stating he would not go in the cell. Bickle did not see the actual fight or kicking; he said after the "altercation was over with" he saw Chandler on the floor in a fetal position with his arms over his head.

## II.     Failure to Preserve and Disclose the Video

### A.     Disclose

The parties have briefed this case primarily quoting authority dealing with failure to disclose evidence. The fact that a video was reviewed by Still was disclosed at the trial; it appears the real

---

[3]Witnesses put the number of people in the book-in area at anywhere from ten to thirty.

4

issue is whether the State violated Chandler's due process right by failing to preserve the video. Since the parties have briefed the issue of the failure to disclose the existence of the video, we will also address that issue.

Under *Brady*, to ensure the accused a fair trial, a prosecutor has an affirmative duty under the Due Process Clause of the Fourteenth Amendment to disclose to the accused all exculpatory or impeachment evidence, regardless of the good faith or bad faith of the prosecution, which is favorable to the defendant and is material to either guilt or punishment. *Brady*, 373 U.S. at 87. A due process violation occurs if (1) the prosecutor fails to disclose evidence that is (2) favorable to the defendant and (3) material. *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000); *Franks v. State*, 90 S.W.3d 771, 796 (Tex. App.—Fort Worth 2002, no pet.). Evidence is material if there is a reasonable probability that, had the evidence been disclosed, the outcome of the trial would have been different. *Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002). Under *Brady*, the defendant bears the burden of showing that, in light of all the evidence, it is reasonably probable the outcome of the trial would have been different had the prosecutor made a timely disclosure. *Id.* The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense. *Id.*

We find Chandler has failed to make sufficient showings on the two necessary parts of his *Brady* claim: that the evidence was favorable and material. Whether unrevealed evidence would have been "favorable" to the accused must be determined by ascertaining whether the evidence "if

5

disclosed and used effectively . . . may make the difference between conviction and acquittal." *Ex parte Mitchell*, 853 S.W.2d 1, 4 (Tex. Crim. App. 1993) (quoting *Thomas v. State*, 841 S.W.2d 399, 404 (Tex. Crim. App. 1992)). Either exculpatory evidence or impeachment testimony can be favorable. *Id*. "Exculpatory evidence" is testimony or evidence which "tends to justify, excuse, or clear the defendant from alleged fault or guilt." *Thomas*, 841 S.W.2d at 404. "Impeachment evidence" is that which is offered "to dispute, disparage, deny, or contradict." *Id*. The only evidence concerning the video is that it did not clearly depict the confrontation and did not assist in determining what occurred. It cannot be determined from this record that the recording would have been favorable to Chandler.

For the same reason, we find no suggestion the video contained material evidence, that is, that there is a reasonable probability that, had the evidence been disclosed to the defense, the outcome of the proceeding would have been different. *Lagrone v. State*, 942 S.W.2d 602, 615 (Tex. Crim. App. 1997) (quoting *Ex parte Kimes*, 872 S.W.2d 700, 702 (Tex. Crim. App. 1993)). The standard is that of "a 'reasonable probability' of a different result," so that the issue "is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). A "reasonable probability," then, is a probability "sufficient to undermine confidence in the outcome of the trial." *Id*.; *Lagrone*, 942 S.W.2d at 615. Since there is no showing that the evidence is favorable to the defendant, it cannot

6

be concluded that the evidence was material—that, if Chandler had known of the video before trial there is a reasonable probability the outcome of the trial would have been different.

### B.    Failure to Preserve

The failure to preserve potentially useful evidence is not a denial of due process unless a criminal defendant can show bad faith. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988); *Neal v. State*, 256 S.W.3d 264, 280 (Tex. Crim. App. 2008); *Thomas*, 841 S.W.2d at 402 n.5; *Jackson v. State*, 50 S.W.3d 579, 589 (Tex. App.—Fort Worth 2001, pet. ref'd); *Williams v. State*, 906 S.W.2d 58, 61 (Tex. App.—Tyler 1995, pet. ref'd). The *Brady* duty extends to evidence that is known only to police investigators and not to the prosecutor. The individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police. *Youngblood v. West Virginia*, 547 U.S. 867, 870 (2006). The State's duty to preserve evidence is limited to evidence that possesses an exculpatory value that was apparent before the evidence was destroyed. *California v. Trombetta*, 467 U.S. 479, 488 (1984). The burden is on Chandler to show that the State acted in bad faith in failing to preserve evidence. *McGee v. State*, 210 S.W.3d 702, 704 (Tex. App.—Eastland 2006, no pet.).

Three factors which have been deemed relevant in determining whether the loss of evidence violates a defendant's right to due process are:  1) the level of government culpability; 2) the likelihood that the lost evidence was exculpatory; and 3) the likelihood that the defendant was significantly prejudiced at trial by the absence of the evidence. *Davis v. State*, 831 S.W.2d 426, 442

7

(Tex. App.—Austin 1992, pet. ref'd).  Unless the defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not, in and of itself, result in denial of due process.  *Id.*; *see Youngblood*, 488 U.S. at 58.  The defendant's due process is only implicated "in those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant."  *Youngblood*, 488 U.S. at 58; *see also Trombetta*, 467 U.S. at 486.

Several other Texas appellate courts have considered this issue—the failure to preserve potentially useful video recordings.  In each of these cases, the courts have found the facts did not establish evidence of bad faith.  *Meador v. State*, No. 2-07-439-CR, 2008 Tex. App. LEXIS 7906  (Tex. App.—Fort Worth Oct. 16, 2008, no pet.) (mem. op., not designated for publication) (accidentally erased video); *Purvis v. State*, No. 12-06-00422-CR, 2008 Tex. App. LEXIS 3962 (Tex. App.—Tyler May 30, 2008, no pet.) (mem. op., not designated for publication) (loss of tape result of negligence, not bad faith); *Smith v. State*, No. 07-05-0289-CR, 2007 Tex. App. LEXIS 5427 (Tex. App.—Amarillo July 11, 2007, no pet.) (mem. op., not designated for publication) (no evidence of bad faith in failing to preserve video recording); *McGee*, 210 S.W.3d at 705 (video of security tape of robbery at Wal-Mart that showed no faces was not preserved); *Salazar v. State*, 185 S.W.3d 90 (Tex. App.—San Antonio 2005, no pet.) (video of prison riot not preserved because policy of prison was to tape over in  fourteen  days); *Mahaffey v. State*, 937 S.W.2d 51 (Tex. App.—Houston [1st Dist.] 1996 , no pet.) (video erased or did not record, no evidence of bad faith).

Here, Still explained the video system was not equipped to download or save the recording to another disk, but it was maintained for sixty days and then discarded. He stated that the recording did not clearly show the defendant and that it was not useful in the investigation. The evidence shows that all such surveillance videos are routinely discarded in sixty days. There is nothing in the record to show bad faith on the part of the State, either by way of the sheriff's office or the State. We therefore overrule this point.

## III. State's Closing Argument

Next, Chandler complains of statements made by the State in closing argument. In its closing argument, the prosecutor said,

> You should be asking yourself, Well, you know, I didn't hear any evidence in this case about what those men did to him once he got in the cell.[4] Did you hear anything? I didn't hear a thing. And I can guarantee you -- I guarantee you if something happened to Steven Chandler from those eight men[5] in that cell, don't you think you would have heard about it? Don't you think every witness would have been subpoenaed? Don't you think [defense counsel] would be parading them around here? That's why he was scared to go in there because of these eight men.

Chandler complains this amounted to a comment on his failure to testify. However, Chandler posited no objection before the trial court. The failure to object to a jury argument or a defendant's

---

[4]One point of dispute in the trial was the reason Chandler refused to go into the holding cell. Witnesses testified Chandler made statements at the time that he would "whoop" or fight the men in that cell; defense questioning tried to suggest Chandler was afraid of those men and feared for his safety.

[5]It was not conclusively established how many men were in the holding cell; one witness said the cell could hold at most eight people.

failure to pursue to an adverse ruling his or her objection to a jury argument forfeits the defendant's right to complain about the argument on appeal. Before a defendant will be permitted to complain on appeal about an erroneous jury argument or that an instruction to disregard could not have cured an erroneous jury argument, he or she will have to show that he or she objected and pursued that objection to an adverse ruling. TEX. R. APP. P. 33.1; *Mathis v. State*, 67 S.W.3d 918, 927 (Tex. Crim. App. 2002); *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996). Based on the foregoing, we hold that Chandler forfeited his right to complain about the State's argument.

We affirm the judgment of the trial court.


Jack Carter
Justice


Date Submitted:     January 29, 2009
Date Decided:       January 30, 2009

Publish