

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-17-00318-CR

RICARDO LOPEZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 137th District Court
Lubbock County, Texas
Trial Court No. 2014-403,654, Honorable John J. "Trey" McClendon III, Presiding

August 7, 2019

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellant Ricardo Lopez appeals from his conviction, following a plea of guilty pursuant to a plea agreement, for the first-degree felony offense of possession of more than four but less than 200 grams of methamphetamine with intent to deliver[1] and the

---

[1] TEX. HEALTH & SAFETY CODE ANN. § 481.112(d) (West 2010).

resulting sentence of thirty years of imprisonment.[2]  Appellant challenges his conviction through two issues.  We will affirm.

## Background

Police found the methamphetamine giving rise to appellant's indictment in a car he was driving, after a traffic stop.  Appellant filed a motion to suppress the evidence obtained during the search of the car.  The court held a hearing on the motion.

The State presented the testimony of Investigator Scott Weems and Investigator Curtis Fish of the Lubbock Police Department.  Weems testified he was conducting surveillance of a Lubbock motel located in a "high crime rate" area and observed a newer model black and red Dodge Charger in the parking lot.  Because he was not in a position to initiate a stop from his surveillance position if that became necessary, Weems called for additional units to assist.  When, minutes later, a male later identified as appellant, came out of the motel and left in the Charger, Weems informed other police units.  Fish followed the Charger.  Weems told the court Fish "radioed . . . that he could see the car coming, and then he radioed that the car had just stopped in the middle of the road."  Hearing Fish say he was going to stop behind the Charger, Weems left his surveillance position to join Fish.

Weems testified that when he arrived, he saw the Charger stopped "in the middle of the traffic lane, on the access road . . ." to the Southeast Loop.  It "wasn't up against the curb, but it was actually in the –in the traffic lane itself, the right-hand traffic lane."

---

[2] TEX. PENAL CODE ANN. § 12.32 (West 2011).  Appellant pled "true" to two enhancement paragraphs included in the indictment.  TEX. PENAL CODE ANN. § 12.42 (West 2011).

Weems testified it was not legal to come to a stop in a lane of traffic. Fish told Weems appellant had "warrants out for his arrest." Appellant was placed under arrest.

Fish also testified to the events. He told the court Weems told him he wanted the Charger followed. Fish said he watched the Charger, and "[h]e drove past me, and then I made a right-hand turn and got—begin following him at a distance." Fish's various descriptions of appellant's actions differed in some details. One of his most specific descriptions was given during cross-examination after counsel made reference to Fish's offense report. Fish testified appellant "stopped in the main lane of travel in the westbound access road obstructing the intersection from Ash Avenue that has access to the access road." On re-direct, Fish told the court appellant first stopped "blocking the intersection of South Loop 289 westbound access road and Ash Avenue." He also told the court the place where the Charger stopped is a "dangerous place to stop, in addition to being illegal."

According to Fish, when he made contact with appellant, appellant "paused" and then said he stopped in the middle of the lane because "he was going too fast." Fish told the court, "Investigator Weems arrived shortly after I placed [appellant] in handcuffs, as I recall."

Appellant testified to a different version of events. He told the court he stopped when he saw Fish coming toward him because he knew Fish was going to pull him over. He said he pulled over to the curb and Fish did not complain about how he was parked.

After appellant was placed under arrest, Weems began an inventory of the car. The inventory quickly became an evidentiary search of the car when Weems saw drugs

3

and cash in the car as he leaned into it. The subsequent search led to the discovery of more drugs, cash, and drug paraphernalia. It is this evidence, along with statements made by appellant, that he sought to have suppressed.

Other officers also interacted with appellant that day. Appellant filed a motion to dismiss, alleging that video evidence from those other police interactions had not been provided to him despite his request that such recordings be preserved. The court heard that motion at the same time it heard appellant's motion to suppress. Following that hearing, the court denied appellant's motions. Appellant now challenges the trial court's ruling on each motion.

Analysis

Motion to Suppress

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard. *Carmouche v. State,* 10 S.W.3d 323, 327 (Tex. Crim. App. 2000) (citing *Guzman v. State,* 955 S.W.2d 85 (Tex. Crim. App. 1997)). We give almost total deference to the trial court's determination of historical facts and then review de novo the trial court's application of the law to those facts. *Id.* (citation omitted). When, as here, the trial court did not make explicit findings of fact, we review the evidence in a light most favorable to the trial court's ruling and assume it made implicit findings of fact supporting its ruling. *Carmouche*, 10 S.W.3d at 327-28; *State v. Garcia-Cantu,* 253 S.W.3d 236, 241 (Tex. Crim. App. 2008) (party prevailing in trial court is "afforded the strongest legitimate view of the evidence and all reasonable inferences"). We review de novo questions of law and mixed questions of law and fact that are not dependent on evaluation of credibility and

4

demeanor. *Fienen v. State,* 390 S.W.3d 328, 335 (Tex. Crim. App. 2012) (citing *Montanez v. State*, 195 S.W.3d 101, 106 (Tex. Crim. App. 2006)).

In a suppression hearing, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007) (citations omitted). The trial court observes the demeanor and appearance of the witnesses and is, consequently, better positioned to determine witness credibility than an appellate court which reads the testimony from the record. *Villarreal v. State,* 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). We will sustain the trial court's suppression ruling if it "is reasonably supported by the record and is correct on any theory of law applicable to the case." *Id.* (citation omitted).

An officer witnessing what he reasonably believes is a traffic violation possesses probable cause to conduct a traffic stop and detain the offender. *State v. Lockhart,* No. 07-04-00304-CR, 2005 Tex. App. LEXIS 6159, at *8 (Tex. App.—Amarillo Aug. 2, 2005, no pet.) (mem. op., not designated for publication) (citations omitted); TEX. TRANSP. CODE ANN. § 543.001 (West 2011). *See also State v. Kurtz,* 152 S.W.3d 72, 79 (Tex. Crim. App. 2004) (distinguishing "arrests" for Rules of the Road violations from other investigative detentions), superseded on other grounds by statute as recognized in *York v. State,* 342 S.W.3d 528, 535 n.20 (Tex. Crim. App. 2011). A person commits a traffic offense if the person stops a vehicle in an intersection. TEX. TRANSP. CODE ANN. § 545.302(a)(3).

Fish's most detailed description of his observations came during his testimony on redirect examination. Referring to his report written on the day of the stop, Fish testified

that when appellant stopped, he blocked "the intersection of South Loop 289 westbound access road and Ash Avenue." Testimony showed Fish's report included a sentence that read, "I activated the flashing red and blue lights and 'wigwag lights' in my department issued vehicle and [appellant] pulled completely off the roadway before stopping."

Weems testified that when he arrived, appellant was out of his car. Appellant's car "wasn't up against the curb, but it was actually in the –in the traffic lane itself, the right-hand traffic lane." On further examination, after counsel noted Fish's testimony was different, Weems explained he was testifying from memory of what occurred three years prior and that he remembered appellant's car in the middle of the lane of traffic and agreed it was obstructing traffic. He explained why he remembered the car positioned that way, telling the court that he never had to "go up on the grass" while searching the car.

Appellant's testimony disputed only two aspects of the officers' testimony, one of which was where he stopped. He said that when Fish initiated the stop, he "pulled over to the right on that—by the curb." He told the court he was not blocking the roadway and he knew because he always pulled "all the way to the right, and [Fish] didn't complain about where I was parked." He denied stopping in the middle of the intersection. Appellant said he pulled over because he saw the officer, Fish, "speeding up, coming towards" appellant and appellant "already knew it was me [Fish] was going to stop." Fish then pulled over and turned on his patrol car lights. Appellant admitted he was speeding and that is "why [he] pulled over."

Fish testified appellant stopped in an intersection, giving Fish cause to believe appellant committed a traffic violation. *See* TEX. TRANSP. CODE ANN. § 545.302(a)(3)

6

(describing offense). Weems said when he arrived, the car was not all the way to the curb but was still in the lane. As noted, appellant's version was different. The trial court was the sole judge of the credibility of the witnesses and the weight to be given their testimony. *St. George,* 237 S.W.3d at 725. Resolution of conflicts in the versions of events the day of appellant's arrest was in the hands of the trial court. *Id.* We defer to the trial court's determination of such issues and do not find an abuse of discretion here.

We resolve appellant's first issue against him.

Motion to Dismiss for Failure to Preserve Evidence

In appellant's second issue, he argues he was deprived of his constitutional rights when the Lubbock Police Department failed to maintain "potentially" exculpatory video evidence of encounters between appellant and two police officers, Timothy Varner and Brinnen Kent, who interacted with appellant after he was arrested. The record shows neither Varner nor Kent was present when appellant was stopped. Varner's recording of his interaction with appellant was produced.

On appeal, appellant argues his constitutional rights guaranteed under the Fifth, Sixth, and Fourteenth Amendments were violated when the video evidence of his encounter with the second officer, Kent, was destroyed pursuant to the police department's 180-day retention policy despite his motion seeking to preserve evidence.

Appellant relies on *Pena v. State,* 166 S.W.3d 274, 278, 281 (Tex. App.—Waco 2005), vacated, 191 S.W.3d 133, 138 (Tex. Crim. App. 2006), in which the court concluded the defendant was denied due course of law under the Texas Constitution because our state's constitution provided a greater level of protection than the United

7

States Constitution. The Fourth Court of Appeals declined to follow the reasoning set forth in *Pena*. *Salazar v. State*, 185 S.W.3d 90, 92-93 (Tex. App.—San Antonio 2005, no pet.). Our court has agreed with the Fourth Court of Appeals. *Alvarado v. State,* No. 07-06-0086-CR, 2006 Tex. App. LEXIS 8696, at *9 (Tex. App.—Amarillo October 9, 2006, no pet.) (mem. op., not designated for publication). In *Alvarado,* we agreed that the Texas Constitution and the United States Constitution "afforded the same standard of protection when dealing with the loss or destruction of evidence in the possession of the State." *Id.* at *9-10 (citing *Salazar*, 185 S.W.3d at 92-93).

We will follow the analysis we employed in *Alvarado*. *Id*. at *9 (citing *California v. Trombetta*, 467 U.S. 479, 488-89 (1984); *Jackson v. State*, 50 S.W.3d 579, 588 (Tex. App.—Fort Worth 2001, pet. ref'd)). We held one complaining of the State's failure to preserve evidence in its possession must demonstrate that the evidence was both favorable and material to his case, and that a mere showing it "might have been favorable does not meet the materiality standard." *Id*. We further held that to sustain a claimed violation of due process or due course of law the defendant must prove the State acted in bad faith when it lost or destroyed the evidence. *Id*. at *9-10 (citing *Jackson,* 50 S.W.3d at 588; *Arizona v. Youngblood,* 488 U.S.51, 58 (1988); *Mahaffey v. State,* 937 S.W.2d 51, 53 (Tex. App.—Houston [1st Dist.] 1996, no pet.)).

Prior to trial, appellant filed a motion for preservation of video evidence. When appellant did not receive all the requested evidence, he filed a document entitled, "Defendant's Motion to Dismiss or In The Alternative To Impose Discretionary Sanctions on the Prosecution for Police Misconduct."

8

Assistant Lubbock City Attorney John Grace appeared at the hearing on appellant's motion. He told the court that the videos requested by appellant of the interactions between appellant and police officers, if such videos had ever existed, had been automatically purged from the electronic database after 180 days pursuant to police department policy.

The custodian of records for the Lubbock Police Department, Charlotte Null, also testified, telling the court her understanding was that "by law, we can purge [video recordings] within 90 days. We hold them for 180 days unless they're marked for evidence."

Varner testified he responded to a call involving appellant. He was called as a backup officer to transport appellant from the jail to the hospital. He testified he recorded the transportation from the jail to the hospital and back because it is "mandatory" and "policy." As noted, Varner's recording was produced. Varner told the court that officers upload their videos "as soon as possible." He also explained that videos not saved as evidence were "purged from our system" after, he thought, "six months."[3]

Weems testified that at the time of appellant's stop, Kent was assigned to Special Operations in the Gang Unit. Because of that assignment, Weems said, Kent would not have been driving a patrol car and his car would not have had the capacity to record

---

[3] The prosecutor stipulated to the trial court that the recording of another officer, Detective Matt Boggs, was "purged after 180 days." Boggs transported appellant from the scene of the stop to the county jail. On appeal, appellant does not refer to Boggs or to his video recording.

9

videos.[4]  Testimony also showed that neither Weems nor Fish were equipped with body cameras and neither of their patrol cars were capable of recording videos.

Appellant testified, telling the court he asked his attorney to request the recordings "because they were saying that I was in the middle and all that."  He agreed that he has maintained, since the beginning, that he was legally parked that day.

Appellant contends that the requested video evidence was "potentially" exculpatory.  But he does not explain how this video evidence would have shown he did not commit the traffic offense to which Fish testified or otherwise cast doubt on the validity of his detention.  Varner, Boggs, and Kent were not present at the scene at the time appellant was stopped.  Thus, none of the officers' recordings would have shown where appellant stopped.  Therefore, the record does not demonstrate that the evidence would have been material or favorable.  Appellant has failed to meet the materiality standard. *Jackson,* 50 S.W.3d at 589.

Further, there is no testimony in the record, nor any assertion by appellant, that the State acted in bad faith*. Id.*  The trial court thus did not abuse its discretion in denying appellant's motion to dismiss.  *See Chandler v. State,* 278 S.W.3d 70, 76 (Tex. App.—Texarkana 2009, no pet.) (finding no bad faith in destruction of jail video recording where the record showed that the video was lost because they were recorded over); *Smith v. State,* No. 07-05-0289-CR, 2007 Tex. App. LEXIS 5427, at *10 (Tex. App.—Amarillo July 11, 2007, no pet.) (mem. op., not designated for publication) (no evidence of bad faith in

---

[4] By the time of this proceeding, Kent was no longer employed by the Lubbock Police Department and was unavailable to testify.

failing to preserve video recording); *Salazar*, 185 S.W.3d 90 at 92 (no abuse of discretion in denial of motion to suppress where video of prison riot not preserved because policy of prison was to tape over in fourteen days).

We overrule appellant's second issue.

### Conclusion

Having resolved each of appellant's issues against him, we affirm the judgment of the trial court.

James T. Campbell
Justice

Do not publish.