COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| STATE OF TEXAS, | § | No. 08-19-00043-CR |
| | | |
| Appellant, | § | Appeal from the |
| | | |
| v. | § | County Criminal Court at Law No. 2 |
| | | |
| MICHAEL ANTHONY COLLASO, | § | of El Paso County, Texas |
| | | |
| Appellee. | § | (TC# 20170C08725) |

## **O P I N I O N**

Appellee Michael Anthony Collaso was charged by information with one count of the Class A misdemeanor offense of driving while intoxicated with a blood alcohol level of 0.15 or more, in violation of Section 49.04 of the Texas Penal Code.[1]  At a hearing on the day of his scheduled trial, Collaso orally moved to dismiss the information, contending that his due process rights were violated because law enforcement officers failed to preserve a cell phone recording taken by a citizen who had been in a vehicle following Collaso prior to his arrest.  The State contends that the trial court erred by granting the motion, arguing that Collaso failed to meet his

---

[1] Section 49.04 of the Penal Code provides that a person commits an offense if the "person is intoxicated while operating a motor vehicle in a public place," and that the offense is a Class A misdemeanor "[i]f it is shown on the trial of an offense under this section that an analysis of a specimen of the person's blood, breath, or urine showed an alcohol concentration level of 0.15 or more at the time the analysis was performed[.]"  TEX.PENAL CODE ANN. § 49.04(a)(d).

1

burden of establishing that: (1) the missing evidence was material to Collaso's case, or (2) that the State acted in bad faith by failing to preserve the evidence. Because we agree that Collaso presented no evidence at the hearing to meet his burden of proving a due process violation, we conclude that the trial court erred in granting the motion, and we therefore reverse and remand this matter to the trial court for further proceedings.[2]

## I. FACTUAL AND PROCEDURAL BACKGROUND

Collaso was arrested for driving while intoxicated during the early morning hours of April 2, 2017. After receiving six continuances, Collaso's case was set for trial on December 3, 2018. At the docket call on the day of his scheduled trial, after noting that the matter had just been brought to its attention during an off-the-record discussion, the trial court held a hearing outside the presence of the jury on the issue of whether the arresting officers' failure to preserve a cell phone recording at the scene of Collaso's arrest violated his due process rights.

Although no evidence was presented at the hearing, the parties' attorneys agreed that a citizen who had been following Collaso's vehicle had recorded Collaso's driving on his cell phone prior to calling 911.[3] At least two officers responded to the 911 call, and found Collaso parked on the side of the road.[4] At the scene, the citizen offered to give the officers his cell phone recording. The parties agreed that one of the officers, an El Paso County Sheriff's Deputy, viewed the recording, but for reasons that are not reflected in the record, both officers at the scene declined to take the citizen's recording into evidence. At the hearing, the State also informed the trial court

---

[2] This case was submitted solely on the State's brief since Appellee Collaso failed to file a responsive brief.

[3] At an earlier hearing on Collaso's motion to suppress evidence, a state trooper testified that he had been dispatched to the scene based on a 911 call from a private citizen reporting a vehicle driving erratically.

[4] According to the State's prosecutor, Collaso was found passed out in his car when the officers arrived.

that the citizen was presently incarcerated and not available to testify at trial, but that his brother, who had also been in the vehicle following Collaso, was available and ready to testify at trial. The State also advised the court that the deputy who had viewed the recording at the scene was on his way to court to testify, but had not yet arrived.

Collaso's attorney orally moved to dismiss the information, arguing that the missing recording was "potentially useful" to his case, and that the officers had acted wrongfully by "deliberately" or "intentionally" refusing to take the recording into evidence. Collaso argued that the officers' failure to preserve the recording prejudiced his case and denied him a "fair trial under due process." The State opposed Collaso's motion, arguing that there was no evidence to support a finding that Collaso's due process rights had been violated, as no witnesses had testified as to any relevant facts, and the State therefore urged the court to wait until it could present the deputy's testimony to shed some light on the issue.

The trial court stated that it would have preferred to hear witness testimony on the issue, particularly from the deputy, but indicated that it was not willing to wait for the deputy to arrive before making its decision. In particular, the trial court expressed concern that a jury had already been assembled and would be prejudiced by a delay in starting the trial. Although the State indicated that it was ready to proceed with the trial, and that it could call other witnesses while waiting for the deputy to arrive, the trial court declined that option. Instead, the trial court granted Collaso's motion to dismiss, finding that the missing recording was "material" to Collaso's case, and that its loss was prejudicial as it deprived Collaso of the opportunity to test the credibility of the witnesses at trial. That same day, the court issued a written order dismissing the State's information against Collaso. This appeal followed.

## II. DISCUSSION

In its sole issue on appeal, the State contends that the trial court erred in granting the motion, asserting that the record was devoid of any evidence to support a finding that Collaso's due process rights were violated. We agree.

### A. Standard of Review

We apply a bifurcated standard of review to the trial court's decision of whether to quash or set aside an information or indictment. *See State v. Moff*, 154 S.W.3d 599, 601 (Tex.Crim.App. 2004); *Gomez v. State*, No. 08-17-00185-CR, 2019 WL 947628, at *2 (Tex.App.--El Paso Feb. 27, 2019, no pet.) (not designated for publication). The amount of deference an appellate court should afford to a trial court's ruling on a motion to dismiss a charging document depends upon which "judicial actor" is better positioned to decide the issue. *See Moff*, 154 S.W.3d at 601. As a general rule, an appellate court affords almost total deference to a trial court's determination of the historical facts that the record supports, especially when the trial court's fact findings are based on an evaluation of a witness's credibility and demeanor. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997) (en banc); *see also Gomez*, 2019 WL 947628, at *2. However, when the trial court's decision to dismiss an indictment or information turns on a question of law, and does not turn on the evaluation of the credibility and demeanor of a witness, then the trial court is in no better position to resolve the issue than an appellate court; in that instance, the appellate court should review the trial court's decision de novo. *See Moff*, 154 S.W.3d at 601; *see also Gomez*, 2019 WL 947628, at *2.

### B. Applicable Law

The Due Process Clause of the Fourteenth Amendment guarantees a defendant in a criminal prosecution a trial comporting with fundamental fairness. *See California v. Trombetta*, 467 U.S.

4

479, 485 (1984). In determining whether the failure to preserve evidence violated a defendant's due process rights, courts have drawn a distinction between lost or missing evidence that can be considered "material exculpatory evidence" and evidence that is at best "potentially useful." *Ex parte Napper*, 322 S.W.3d 202, 229, 231 (Tex.Crim.App. 2010), *citing Arizona v. Youngblood*, 488 U.S. 51, 57 (1988); *see also Gelinas v. State*, No. 08-09-00246-CR, 2015 WL 4760180, at *8 (Tex.App.--El Paso Aug. 12, 2015, no pet.) (not designated for publication). When the State fails to preserve or disclose material-exculpatory-evidence, it violates the defendant's due process rights regardless of the State's motives, and therefore, the question of whether the State acted in bad faith is "irrelevant." *Ex parte Napper*, 322 S.W.3d at 229, *citing Youngblood*, 488 U.S. at 57; *see also Illinois v. Fisher*, 540 U.S. 544, 547 (2004) (recognizing that if the State withholds material-exculpatory-evidence, a federal due process violation occurs regardless of whether the State acted in bad faith). However, when the State fails to preserve evidence that is merely "potentially useful," the defendant has the burden of demonstrating that the State acted in "bad faith" by failing to preserve the evidence. *Ex parte Napper*, 322 S.W.3d at 229, *citing Youngblood*, 488 U.S. at 58; *see also Neal v. State*, 256 S.W.3d 264, 280 (Tex.Crim.App. 2008) (recognizing that the government's "failure to preserve potentially useful evidence" does not violate due process unless the defendant shows that the loss of the evidence resulted from "bad faith on the part of the police.").

### C. Application

#### 1. Material or merely potentially useful?

The first step in our analysis is to determine whether the missing cell phone recording should be characterized as either "material-exculpatory-evidence" or merely "potentially useful" evidence. In order to be considered material-exculpatory-evidence, lost or destroyed evidence

must possess an "exculpatory" value that was apparent at the time of its destruction or loss; in other words, it must be evidence that could be "expected to play a significant role in the suspect's defense," and the evidence must be of such a nature that the defendant would be unable to obtain comparable evidence by other "reasonably available means." *Ervin v. State*, No. 08-15-00025-CR, 2017 WL 3614237, at *11 (Tex.App.--El Paso Aug. 23, 2017, pet. ref'd) (not designated for publication), *citing Trombetta*, 467 U.S. at 488-89; *see also Gelinas v. State*, No. 08-09-00246-CR, 2015 WL 4760180, at *8 (Tex.App.--El Paso Aug. 12, 2015, no pet.) (not designated for publication) (it is not enough to show that missing or destroyed evidence might have been favorable to the defendant in order to meet the materiality standard, but instead, its exculpatory value must be "apparent."). Although the Court of Criminal Appeals has not settled on a definitive test for determining when evidence is merely potentially useful, it has indicated that evidence is *not* potentially exculpatory when its potential value is based on (1) "mere speculation," (2) when the evidence was "legally irrelevant to the crime charged," or (3) when the chance that the evidence would exonerate the defendant was "virtually nil." *Ex parte Napper*, 322 S.W.3d at 231. And the Court has further noted that, in some instances, the "potential exculpatory value of evidence" may be so attenuated that even a showing of bad faith will not afford a basis for relief. *Id.*; *see also Ervin*, 2017 WL 3614237 at *13-14.

The trial court determined that the missing cell phone recording was material-exculpatory-evidence to Collaso's case based solely on the arguments of counsel. However, generally the arguments of counsel are not considered "evidence" upon which a trial court may make a ruling. *See, e.g.*, *State v. Guerrero*, 400 S.W.3d 576, 586 (Tex.Crim.App. 2013); *Elkins v. Stotts-Brown*, 103 S.W.3d 664, 669 (Tex.App.--Dallas 2003, no pet.) (recognizing that motions and arguments

of counsel are not evidence).  Therefore, the trial court had no evidence from which to make this determination.

Moreover, there is nothing in the arguments of counsel, or otherwise in the appellate record, that would convince us that the trial court correctly found that the missing recording was material-exculpatory-evidence to Collaso's case.  In other words, there is nothing in the record that would suggest that that the recording had any exculpatory value that was apparent to the officers at the scene of Collaso's arrest.  To the contrary, the record indicates that the very reason the witness made the recording stemmed from his concern that Collaso was driving erratically on the highway, which also prompted him to call 911 to alert law enforcement.[5]  Accordingly, the recording was more likely to have demonstrated that Collaso was driving in an impaired manner, and as the State pointed out at the hearing, the recording would have been more beneficial to the State's case, and likely would not have played a significant role in Collaso's defense.  We therefore conclude that the trial court erred in finding that the missing recording was material-exculpatory-evidence to Collaso's case.  *See, e.g.*, *Higginbotham v. State*, 416 S.W.3d 921, 926-27 (Tex.App.--Houston [1st Dist.] 2013, no pet.) (missing video from the scene, which had slight exculpatory value, was not material to defendant's case, where video taken at the police station showed that the defendant had failed his field sobriety tests); *Ramirez v. State*, 301 S.W.3d 410, 420 (Tex.App.--Austin 2009, no pet.) (destroyed videotape of a crime scene was not material-exculpatory-evidence, where no evidence showed tape would have exonerated defendant, and at best defendant could only assert that the evidence *might* have assisted his defense).

---

[5] At the motion to suppress hearing, the trooper who arrested Collaso testified that the citizen who called 911 did so because he had observed Collaso driving erratically on the highway.  He also testified that the 911 caller and his brother informed him at the scene that they had both observed Collaso driving "horribly," stating that Collaso had been "swerving," causing him to almost hit their vehicle.  However, the trooper did not provide any testimony regarding the cell phone recording at the motion to suppress hearing, as the issue was not raised at that time.

On the other hand, given the lack of evidence in the record, we are not willing to find that the missing recording had no value to Collaso's case, and instead, we recognize the possibility that it might have been at least "potentially useful" to his defense. *See Burdick v. State*, 474 S.W.3d 17, 26-27 (Tex.App.--Houston [14th Dist.] 2015, no pet.) (treating lost videotape of defendant at the time of booking as being potentially useful where it was unclear whether it would have helped or hurt the defendant's case). In particular, we recognize, as the trial court did that, if nothing else, Collaso could have used the recording to attempt to impeach the credibility of the State's lay witness who was prepared to testify regarding his observations of Collaso's driving prior to his arrest.[6] *See, e.g.*, *Chandler*, 278 S.W.3d 70, 74 (Tex.App.--Texarkana 2009, no pet.) (recognizing that either exculpatory evidence or impeachment testimony can be favorable to a defendant's case). Accordingly, at least for purposes of this appeal, we will treat the missing recording as being potentially useful to Collaso's case. *See generally Gelinas*, 2015 WL 4760180, at *9 (where officers failed to record entire traffic stop, the missing portion of the recording was treated as being merely potentially useful to defendant's case); *Chandler*, 278 S.W.3d at 75 (holding that in the absence of any evidence that a video recording of an altercation that took place in a jail cell would have played a significant role in the defendant's case, the video recording could be considered potentially useful at best); *Gamboa v. State*, 774 S.W.2d 111, 112 (Tex.App.--Fort Worth 1989,

---

[6] We recognize that Collaso was charged with driving while intoxicated with a blood-alcohol level of 0.15, also known as a "per se" theory of intoxication, and that Collaso therefore could be convicted based solely on evidence that he had the requisite level of alcohol in his system at the time the test was performed. *See State v. Mechler*, 123 S.W.3d 449, 455 (Tex.App.--Houston [14th Dist.] 2003), *aff'd*, 153 S.W.3d 435 (Tex.Crim.App. 2005). Therefore, unlike cases in which a defendant is charged under an "impairment" theory of intoxication, which requires evidence that the defendant did not have the normal use of his mental or physical faculties due to the ingestion of alcohol or other substances, the State was not required to present eyewitness testimony that Collaso was driving in an impaired manner in order to obtain a conviction. *Id.* However, the State was still required to prove that Collaso had been operating a motor vehicle at the time that his blood alcohol level was above the legal limit. *Id*. And particularly since the officers did not actually observe Collaso driving, the lay witness's testimony, as well as the cell phone recording, would have been relevant on this issue.

8

pet. ref'd) (treating videotapes made after defendant's arrest as being potentially useful to defendant's case).

### 2. No evidence of bad faith.

As set forth above, when the State has failed to preserve evidence that is considered merely "potentially useful," rather than "material" to a defendant's case, the defendant has the burden of demonstrating that failure to preserve the evidence was done in bad faith in order to establish a due process violation. *Gelinas,* 2015 WL 4760180, at *9. In the present case, the trial court made no finding that the officers acted in bad faith, nor was there any evidence in the record to support such a finding.

Although the Court of Criminal Appeals has recognized that the term, "bad faith" cannot be defined with precision, it has made it clear that the term entails more than mere negligence on the part of the State or law enforcement officials where evidence is either lost or destroyed. *See Ex parte Napper*, 322 S.W.3d at 238; *see also Youngblood*, 488 U.S. at 58; *see also Ervin*, 2017 WL 3614237, at *13 (recognizing that although bad faith may be inferred from a variety of circumstances, mere negligence, standing alone, is insufficient to sustain a finding of bad faith). Further, the Court has also recognized that bad faith is "more than simply being aware that one's action or inaction could result in the loss of something that is recognized to be evidence." *Ex parte Napper*, 322 S.W.3d at 238. Instead, bad faith requires a showing of "some sort of improper motive, such as personal animus against the defendant or a desire to prevent the defendant from obtaining evidence that might be useful." *Id.*

At the hearing, despite the State's offer to present the testimony of the officers who were at the scene to shed some light on why they declined to take the citizen's cell recording into evidence, the trial court made the decision to rule on Collaso's motion to dismiss without first

hearing any witness testimony. Instead, at the hearing, Collaso's attorney simply made representations that the officers at the scene "deliberately" chose not to take the recording into evidence, thereby suggesting that their intentional decision reflected that they were acting in bad faith. But even if we were to accept as true that the officers intentionally declined to take the recording into evidence, standing alone, this would be insufficient to establish bad faith, as it does not support a finding that the officers had a personal animus toward Collaso, or that they acted with the intent of preventing Collaso from obtaining evidence that might have helped his case. However, we decline to speculate on the officers' motives for failing to preserve the cell phone recording, as the simple fact remains that Collaso presented no evidence at the hearing from which the trial court could have reasonably inferred that the officers acted in bad faith by failing to preserve the recording.

Accordingly, we conclude that, based on the record before us, the trial court erred in finding that Collaso's due process rights were violated.

The State's sole issue on appeal is sustained.

## III. CONCLUSION

We reverse the trial court's order dismissing the information and remand this matter for further proceedings in accordance with our opinion.[7]

JEFF ALLEY, Chief Justice

April 15, 2020

Before Alley, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)

---

[7] Although we express no opinion on whether any such motion would be likely to succeed, on remand, Collaso is free to file a motion to dismiss the information on due process grounds, and request that the trial court hold a proper evidentiary hearing to determine whether he can meet his burden of establishing a due process violation.

10