

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-20-00058-CR
_____

MICHAEL CAMERON DANIELS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 369th District Court
Cherokee County, Texas
Trial Court No. 21212

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Stevens

# MEMORANDUM OPINION

A Cherokee County jury found Michael Cameron Daniels guilty of driving while intoxicated (DWI), third or more, and the trial court sentenced him to ten years' imprisonment.[1] On appeal, Daniels claims that the trial court erred because it (1) failed to declare a mistrial after a comment from a discharged veniremember, (2) admitted two Google maps showing the location of the traffic accident that led to Daniels's arrest, (3) admitted a specimen of Daniels's blood where the hospital technician did not swear to her procedure, (4) denied Daniels's motion for directed verdict, and (5) denied Daniels's request for a new trial. For the reasons below, we affirm the trial court's judgment.[2]

## I.    Background

Around 11:00 a.m. on February 19, 2019, Daniels was driving his pick-up truck in Jacksonville, Texas. He lost control of his truck, ran over two mailboxes, and then ran off the road. Daniels's truck came to rest against a fence in front of a church.

Officer Greg Compton responded to the scene of the accident. Observing skid marks on the road and the two felled mailboxes,[3] Compton doubted Daniels's description of events leading to his crash. Compton noted that Daniels seemed to avoid speaking or breathing close to Compton, and he described Daniels as slurring his speech. Having not administered field

---

[1]*See* TEX. PENAL CODE ANN. § 49.09(b).

[2]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[3]At least some of the skid marks were in the oncoming lane, that is, in the opposite lane in which Daniels should have been traveling.

sobriety tests (FSTs) in several years, Compton summoned Corporal Steven Markasky to the scene. Markasky administered the tests and concluded that Daniels demonstrated six positive clues and thus was likely intoxicated.

Daniels was arrested and then refused to provide a sample of his breath or blood. As a result, Compton prepared documents to request a search warrant and obtain a sample of Daniels's blood. A warrant issued, and Daniels was taken to Christus Mother Frances hospital in Jacksonville. At the hospital, a technician drew a specimen of Daniels's blood.[4] Following the blood draw, Daniels was taken to the jail in Rusk, Texas.

## II.    The Trial Court Did Not Err in Failing to Grant a Mistrial

In his first point of error, Daniels complains of a statement made after the jury had been selected, impaneled, and sworn. The statement was made by a veniremember who had not been selected for the jury. Daniels explained to the trial court,

> I just had a juror who was dismissed come up to the prosecutor in front of the jury that has just been sworn and say [“]*Now that I'm done, gig 'em*[5]*, go get 'em.*[”] And I've never had that happen. And it was in front of the juror [sic], right within four feet of the juror [sic] . . . as they sat. So -- I don't know. I've never had that happen. So, I'm going to move for a mistrial, because I don't think it can be cured when you have a perspective juror jump up and yell to the prosecutor.

The State responded that it understood the released veniremember to have said, “[‘]*Gig 'em*[’] I took that to mean because she saw my Aggie ring. She didn't -- I did not hear her say [‘]*Go get 'em*[’], or anything like that.” The State said that it did not know the woman, though she and the

---

[4]More evidence will be discussed in our analysis, below, of Daniels's point of error claiming that the trial court should have granted his motion for a directed verdict.

[5]This Court takes judicial notice that “gig 'em” is a regional, if not worldwide, expression of greeting or *esprit de corps* of graduates, students, and fans of Texas A & M University, College Station, Texas.

3

prosecutor lived on the same street. Daniels said that the woman had been struck from the venire because she had said that she could not be impartial in a DWI trial.

The trial court denied Daniels's request for a mistrial but offered to instruct the jury to disregard the statement. Daniels declined, not wanting to draw further attention to the matter. Nothing in the record demonstrates whether the comment was heard by the seated, sworn jury.

## A. Standard of Review

We review a trial court's denial of a mistrial under an abuse-of-discretion standard. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009); *Sanders v. State*, 387 S.W.3d 680, 687 (Tex. App.—Texarkana 2012, pet. struck). We consider "the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of the ruling." *Ocon*, 284 S.W.3d at 884 (citing *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004)). If the ruling was within the zone of reasonable disagreement, it must be upheld. *Id.*; *Sanders*, 387 S.W.3d at 687. Mistrial is only an appropriate remedy when the error is highly prejudicial and incurable. *Id.* (citing *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004)).

## B. Analysis

During voir dire in *Murray v. State*, 172 S.W.3d 782 (Tex. App.—Amarillo 2005, no pet.), one veniremember said that he knew Murray from the neighborhood and "[e]verybody [knew who] he was." *Id.* at 784. The trial court "collectively asked the venire members if they heard [the veniremember's] utterance and whether it would 'affect' their 'ability to be fair' towards" Murray. *Id.* "The trial court noted for the record that though most 'if not all' of the

4

venire members indicated that they heard the comment, '[a]bsolutely nobody indicated that [it] would have anything to do with the verdict." *Id.* (alteration in original). The trial court denied Murray's motion for a mistrial. *Id.* The court of appeals found that an instruction to disregard "would have cured the purported evil arising" from the statement and that there was no abuse of discretion in denying the mistrial. *Id.* at 785.

In *Decker v. State*, 894 S.W.2d 475 (Tex. App.—Austin 1995, pet. ref'd), the State concluded its voir dire with a statement bearing a strong implication that the defendant "had molested other children":

> A defendant also has a right to only be tried on one case. In other words, it doesn't matter what kind of criminal history he has or what other kind of accusations have or have not been made against him. A child abuse case—a defendant could molest every child in the neighborhood and you don't get to hear about that in any particular case. So don't think because the state doesn't present other evidence that it's not out there. The law is real strict on what evidence can be presented to you.

*Id.* at 476–77. The trial court twice instructed the venire to disregard the State's comments. At the bench, the trial court admonished the State that its comments were improper, but it denied Decker's request for a mistrial. *Id.* at 477. The court of appeals held, "While the prosecutor's comments were manifestly improper, they were not so prejudicial as to be incurable by the court's instructions to disregard." *Id.*

As in *Murray*, the statement by the unnamed veniremember here was "vague or innocuous. It did not explain itself. Nor does the record reveal that [the commenting veniremember] or anyone else explained what was meant." *Murray*, 172 S.W.3d at 784. Unlike *Murray*, though, Daniels made no record or any attempt to establish if any other prospective

5

jurors heard the "gig 'em" comment and, if they had, whether the comment would affect their deliberations. Daniels also failed to demonstrate that an instruction to disregard would not have cured any error by the veniremember's comment.[6] As a result, on the record before us, we cannot say the trial court abused its discretion in denying Daniels's request for a mistrial. We, therefore, overrule Daniels's first point of error.

## III.  Authentication of Google Map Evidence

During the questioning of Compton about the accident scene, the State introduced two Google maps that purported to be aerial views of the intersection where Daniels ran off the road. Daniels objected that Compton could not authenticate the maps, as he had not printed the maps, did not know who had printed the maps or when they were printed, and had not been in "an airplane and reviewed that aerial" in more than fifteen years. The State's only response to Daniels's objection was that the maps would assist Compton's testimony to the jury and help the jury understand where in Jacksonville the accident occurred. The trial court overruled the objection and admitted the maps.

On appeal, Daniels argues that Compton's testimony was insufficient to authenticate the maps. *See* TEX. R. EVID. 901. That said, Daniels's appellate brief offers no authority for what is required to authenticate a Google map. Nor does the State's.[7]

---

[6]"[I]nstructions to disregard are generally considered sufficient to cure" an improper argument or statement before the jury "because it is presumed that the jury will follow those instructions." *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010).

[7]We have found some federal opinions discussing the matter, without clear resolution. *See United States v. Lizarraga-Tirado*, 789 F.3d 1107, 1110 (9th Cir. 2015) ("So when faced with an authentication objection, the proponent of Google–Earth–generated evidence would have to establish Google Earth's reliability and accuracy.

"We review a trial court's decision to admit or exclude evidence for an abuse of discretion." *Flowers v. State*, 438 S.W.3d 96, 103 (Tex. App.—Texarkana 2014, pet. ref'd) (citing *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010)). "Abuse of discretion occurs only if the decision is 'so clearly wrong as to lie outside the zone within which reasonable people might disagree.'" *Id.* (quoting *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008) (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g)). "We may not substitute our own decision for that of the trial court." *Id.* (citing *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003)). "We will uphold an evidentiary ruling if it was correct on any theory of law applicable to the case." *Id.* (citing *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009)).

Rule 38.1(h) of the Texas Rules of Appellate Procedure requires that a brief contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(h). An inadequately briefed issue may be waived on appeal. *McCarthy v. State*, 65 S.W.3d 47, 49 n.2 (Tex. Crim. App. 2001); *Heiselbetz v. State*, 906 S.W.2d 500, 512 (Tex. Crim. App. 1995); *see Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284–85 (Tex. 1994) (discussing "long-standing rule" that point may be waived due to inadequate briefing); *see also Wyatt v. State*, 23 S.W.3d 18, 23 n.5 (Tex. Crim. App. 2000) ("We will not make appellant's arguments for him and hold the allegation to be inadequately briefed").

---

That burden could be met, for example, with testimony from a Google Earth programmer or a witness who frequently works with and relies on the program.").

Having failed to provide this Court with controlling authority on this matter, we find that Daniels has waived this argument. As a result, we overrule Daniels's second point of error.

## IV. Daniels's Challenge to Blood Draw Evidence Waived

In his third point of error, Daniels complains that the trial court should not have admitted the blood sample obtained by a hospital technician after Daniels's arrest.

Gemma Tulio, the technician who withdrew the blood, signed a document that was formatted to be an affidavit and that included language that Tulio was over eighteen years old and capable of making an affidavit. The affidavit also stated that Tulio was a "[q]ualified technician" who "on the 16th day of February, 2019[,] at [1]:14 P.M." took a blood sample from Daniels "using reliable procedures as recognized by the scientific community in the State of Texas and in a sanitary place."

Although Tulio signed a document stating that her signature was "SWORN AND SUBSCRIBED before" Compton on the same date, Compton admitted to Daniels that he did not swear or render any oath to Tulio before obtaining her signature.[8] On appeal, Daniels contends that this failure to properly obtain Tulio's signature under oath renders the blood evidence inadmissible.[9]

However, the next day at trial, the State presented testimony from Karen Shumate, a Department of Public Safety (DPS) chemist. Shumate testified that she tested the specimen in State's Exhibit 7, which Compton identified as the blood sample he received from the technician

---

[8]Daniels questioned Compton on voir dire examination.

[9]Daniels's brief, after complaining of the lack of proper oath on Tulio's part, claims that "the affidavit and everything based thereon should have been excluded and not allowed to be considered by the jury."

8

and sent to the DPS laboratory. Shumate testified that she analyzed the blood sample and found that it contained a blood-alcohol concentration of 0.128.[10] Also, before Compton's testimony, the State presented testimony from the Jacksonville Police Department's property custodian, who identified State's Exhibit 7 as the blood sample obtained from Daniels. Daniels's name was on the sample's evidence tag. The custodian testified that she delivered that sample to the DPS laboratory and retrieved it after testing. Daniels lodged no objections to the testimony of either Shumate or the property custodian. "It is well established that questions regarding the admission of evidence are rendered moot if the same evidence is elsewhere introduced without objection; any error in admitting evidence over a proper objection is harmless if the same evidence is subsequently admitted without objection." *Chamberlain v. State*, 998 S.W.2d 230, 235 (Tex. Crim. App. 1999).

Because Daniels failed to object to other testimony about his blood sample, he waived any complaint about the admission of that sample. We, therefore, overrule Daniels's third point of error.

## V. The Trial Court Did Not Err in Overruling Daniels's Motion for a Directed Verdict

After the State rested, Daniels moved for a directed verdict, and the trial court denied that motion. On appeal, Daniels claims error in that ruling. He refers to his above points of error, claiming that those alleged errors "unreasonably influenced a verdict of guilty and the punishment assessed." Yet, as explained, we have found no reversible error in Daniels's above complaints. Further, "[w]e treat a point of error complaining about a trial court's failure to grant

---

[10]Daniels does not challenge the chain of custody.

9

a motion for directed verdict as a challenge to the legal sufficiency of the evidence." *Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996).

### A.      Standard of Review

"In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). "Our rigorous legal sufficiency review focuses on the quality of the evidence presented." *Williamson*, 589 S.W.3d at 297 (citing *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring)). "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)).

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Id.* at 298 (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The 'hypothetically correct' jury charge is 'one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of

proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240).

"In our review, we consider 'events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act.'" *Id.* at 297 (quoting *Hooper*, 214 S.W.3d at 13 (quoting *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985))). "It is not required that each fact 'point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction.'" *Id.* (quoting *Hooper*, 214 S.W.3d at 13). "Circumstantial evidence and direct evidence are equally probative in establishing the guilt of a defendant, and guilt can be established by circumstantial evidence alone." *Id.* (citing *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13 (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004))). "Further, 'we must consider all of the evidence admitted at trial, even if that evidence was improperly admitted.'" *Id.* at 297–98 (quoting *Fowler v. State*, 517 S.W.3d 167, 176 (Tex. App.—Texarkana 2017), *rev'd in part by* 544 S.W.3d 844 (Tex. Crim. App. 2018) (citing *Moff v. State*, 131 S.W.3d 485, 489–90 (Tex. Crim. App. 2004))).

The jury, as "the sole judge of the credibility of the witnesses and the weight to be given their testimony[, could] 'believe all of [the] witnesses' testimony, portions of it, or none of it.'" *Id.* at 297 (quoting *Thomas v. State*, 444 S.W.3d 4, 10 (Tex. Crim. App. 2014). "We give 'almost complete deference to a jury's decision when that decision is based upon an evaluation of credibility.'" *Id.* (quoting *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008)).

11

**B.     Analysis**

Daniels was questioned by Compton after Daniels levelled two mailboxes, ran off the road, and crashed his truck into a fence. At the scene of the accident, Daniels seemed to have trouble understanding or processing Compton's questions. Daniels also exhibited six signs of intoxication when administered field sobriety tests. An empty bottle of bourbon was found in Daniels's truck, between the cupholder and console. Daniels refused to give a sample of his blood, and once drawn, Daniels's blood alcohol was 0.128, more than the legal limit for intoxication in Texas.

We also observed on the recording from Compton's body camera that Daniels was slight of build, which could have bearing on his intoxication level based on how much alcohol he consumed. Also, the accident occurred around 11:00 in the morning, and Daniels told Compton that he had consumed several beers six hours earlier, at around 5:00 a.m.[11] Compton also described Daniels as unsteady on his feet at the accident scene, though we recognize that the scene was essentially a bar ditch and the embankment above it. Daniels also fell asleep in Compton's police car on the way to the hospital, though at some point Daniels spat tobacco juice in the police car.

All these facts, in concert, could have allowed a reasonable jury to convict Daniels of DWI.[12] The evidence was sufficient to support the jury's verdict of guilty. As a result, Daniels's fourth point of error is overruled.

---

[11]Daniels first admitted that he had had four beers, then later said that he had had six beers.

[12]Two prior, predicate DWI convictions were admitted without objection at trial. On appeal, Daniels raises no challenge to those convictions or their admission in evidence.

## VI.     Denial of Motion for a New Trial

In his final point of error, Daniels complains that the trial court erred by allowing Daniels's motion for a new trial to be overruled by operation of law. *See* TEX. R. APP. P. 21.8(c). We review a trial court's order denying a new trial under an abuse of discretion standard. *Briggs v. State*, 560 S.W.3d 176, 183–84 (Tex. Crim. App. 2018). "This is a deferential standard of review that requires appellate courts to view the evidence in the light most favorable to the trial court's ruling." *Burch v. State*, 541 S.W.3d 816, 820 (Tex. Crim. App. 2017).

Daniels's motion for a new trial simply alleged that the jury's verdict was "contrary to the law and the evidence." His appellate brief references his previous points of error and claims that the "individual and cumulate errors seen in the above points of error[] combine to reflect a verdict borne out of prejudice, carelessness and improper evidence." Leaving aside whether these allegations of error comport with one another,[13] Daniels provides no authority or analysis to explain why the trial court erred to let the motion overrule by operation of law. After reviewing the record and applicable law, we cannot say "no reasonable view of the record could support the trial court's ruling[s]," either as to the above points of error or as to the motion for a new trial. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007).

Finding no abuse of discretion in allowing the motion for a new trial to be overruled by operation of law, we overrule Daniels's fifth point of error.

---

[13]*See* TEX. R. APP. P. 33.1.

## VII. Conclusion

We affirm the trial court's judgment.

Scott E. Stevens
Justice

Date Submitted:     December 7, 2020
Date Decided:       January 27, 2021

Do Not Publish